Samuelson v. Palmer.

No. 19,697.

OTIS E. SAMUELSON, *Appellant*, V. WILLIAM PALMER, *Appellee*.

SYLLABUS BY THE COURT.

1. SALE—*Land—Contract to Repurchase—Time Essence of Contract— Time Expired—Specific Performance Denied.* The defendant sold a farm to the plaintiff and as an inducement to purchase made the following written promise:

"I hereby agree to give Otis E. Samuelson, $7.50 per acre in advance of the price he has paid me for 184 acres (described).
"Expiration of this agreement, Feb'y 26, 1910.
WILLIAM PALMER."

Extensions were duly endorsed on this instrument each year for four years, the last one expiring February 26, 1913: *Held*, that parol testimony was inadmissible to prove that an advance of $7.50 per acre *per annum* was intended as consideration for such extensions.

2. SAME—*Contract to Repurchase—An Optional Contract.* The foregoing written instrument was an optional agreement to purchase; and to bind the maker, the owner should have accepted the proposition before its expiration, and an acceptance "thirty days or six weeks" afterwards was too late.

Appeal from Barber district court; PRESTON B. GILLETT, judge. Opinion filed November 6, 1915. Affirmed.

*Samuel Griffin,* of Medicine Lodge, for the appellant.

*Seward I. Field, J. N. Tincher,* both of Medicine Lodge, and *A. L. Noble,* of Winfield, for the appellee.

The opinion of the court was delivered by

DAWSON, J.: The plaintiff, Otis E. Samuelson, bought a farm of 184 acres in Lyon county from the defendant, William Palmer, on February 26, 1909. The price was $55 per acre. As an inducement to Samuelson to purchase the farm, Palmer executed the following written undertaking:

"I hereby agree to give Otis E. Samuelson, $7.50 per acre in advance of the price he has paid me for 184 acres of Allen Creek, Lyon Co., Kansas, formerly owned by Samuel P. Maddon.
"Expiration of this agreement, Feb'y 26, 1910.
"(Signed)   WILLIAM PALMER.
"February 25th, 1910.  This agreement extended to May 26th 1910.
"(Signed)   WILLIAM PALMER.

"It is understood by W. Palmer that he has to bear all expenses above the $62.50 per acre, including interest on $3000.00 loan and all other expenses incurred.          (Signed)   WILLIAM PALMER.

"This agreement is extended one year from Feb'y. 26th, 1910.
                              "(Signed)   WILLIAM PALMER.
                              "(Signed)   O. E. SAMUELSON.

"This agreement is extended two years from Feb. 26th, 1911.
                          '   "(Signed)   WILLIAM PALMER.
                              "(Signed)   O. E. SAMUELSON."

Several days prior to the first expiration of this agreement Samuelson notified Palmer that he would turn over the land and expected him to pay $62.50 per acre, or $7.50 in advance of what he gave for it. On the day of the expiration Samuelson came to Medicine Lodge and offered to turn over the deed to this farm upon the payment to him of the agreed price. Palmer said that money was scarce, that he did not have the money, and asked for an extension of time, which was granted him by the appellant, and the notation was made as shown on the original written undertaking.

On or about May 26, 1910, Samuelson came to see Palmer, the appellee, and demanded the amount that was due him according to the agreement; that he had the deed and was willing to make it out to him. The appellee again said that he did not have the money, and that the best he could do would be to have this agreement extended until May 26, 1911, to which the appellant agreed.

Again, on February 26, 1911, Samuelson asked Palmer to carry out his agreement, but he refused to do so. Appellant was ready and willing at the time to turn over the deed for the consideration of the purchase price, the interest and expenses, and the advance of $7.50 per acre. This is shown by the last endorsement, but as a similar arrangement was made on February 26, 1912, and the space on the paper for endorsements was exhausted, the last endorsement was altered by mutual consent, so as to read that it expired February 26, 1913. At the expiration of the last extension of time (or afterwards) the defendant Palmer told the plaintiff that he could not comply with the terms of his written undertaking, and Samuelson brought this action, setting up the facts and asking for judgment for $5520 as damages for breach of contract.

The plaintiff offered to prove that each extension was made

in consideration of an oral promise on the part of Palmer to pay an additional sum of $7.50 per acre; that is, an advance of $7.50 per annum per acre. This advance of $7.50 per acre per annum would be $30 per acre in four years, and it is on this theory of $30 per acre for one hundred and eighty-four acres that the aggregate damages of $5520 are claimed.

Defendant's answer was a general denial, and at the trial a demurrer to plaintiff's evidence was sustained. On this ruling and the exclusion of plaintiff's proffered testimony that the several extensions were made in consideration of defendant's oral promise to pay an advance of $7.50 per acre *per annum* for each of these extensions, this appeal is taken.

1. The writing and its endorsements are not ambiguous. The endorsements all refer to "this agreement." What agreement? Clearly the original agreement. The endorsements merely extend the time when the defendant was to take the land at the advance of $7.50 per acre over the original purchase price. The admission of oral testimony to prove that an advance of $7.50 per annum for each extension would disturb all settled rules of evidence touching the integrity of written instruments. Certainly the exclusion of such testimony was not error.

Counsel cite standard authorities to show that written contracts duly executed import a consideration, and that parol testimony is competent to show what the consideration actually was. Very true. And in this case, it was competent to show the consideration for the instrument in controversy. That consideration was the inducement to Samuelson to buy Palmer's farm. But the obligation of Palmer, for that inducement and as the consideration, was Palmer's written offer to repurchase the farm at an advance of $7.50 per acre. To show by parol evidence what the unmentioned consideration actually was is competent; to alter the plain terms of the written instrument by parol testimony would never do.

2. What effect does this have on the general result? It does not appear that the plaintiff makes any claim to be entitled to judgment for $7.50 per acre at this time. The last extension expired on February 26, 1913. Perhaps he was not willing to surrender the farm at the end of four years for a mere advance of $7.50 per acre. His action was brought to recover the

promised advance of $30 per acre under a parol agreement collateral to the written undertaking and its endorsed extensions. Moreover, there is a dispute in the testimony, or rather in the abstracts of the parties, on the question whether Samuelson accepted Palmer's offer within the term of the last extension expiring February 26, 1913. To clear up this difficulty we have resorted to the original transcript. In it we find:

Direct examination of Samuelson:

"Q. Now at the end of that year, or along about February 26, 1913, did you call upon Mr. Palmer again? A. Yes, sir.

"Q. Did you have any conversation with him? A. Yes, sir.

"Q. State what that was? A. I had a conversation with him to deliver a deed over to him for this land, and for him to pay me for the land that was agreed to."

Cross-examination:

"Q. Did you see him (Palmer) any time in the month of February, 1913. A. I think not. It was very close to the latter part of the month. I notified him but I could n't come up, it stormed.

"Q. What is your best judgment about when you did see Mr. Palmer? A. I think it was perhaps thirty days, maybe more and maybe a little less.

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

"Q Well, do you mean that it stormed for thirty days that you could n't come up from Capron, Oklahoma? A. I do not mean it stormed that much.

"Q. You meant that you did n't come on the 26th on account of the storm? A. Yes sir, but I think there was something else that come up after the storm.

"Q. What is your best judgment when it was you came up? A. Well, did n't I answer that question? Is not that the same question?

"Q. You said it was as much as 30 days or maybe more? A. That is to the best of my recollection. It might have been six weeks."

From these excerpts of the plaintiff's evidence, it seems clear that no acceptance of Palmer's offer to repurchase the farm was made by Samuelson during the period of the last extension nor for a month or six weeks thereafter. This was too late. (*Bras v. Sheffield,* 49 Kan. 702, 710, 31 Pac. 306; *Blanchard v. Jackson,* 55 Kan. 239, 37 Pac. 986; *Chadsey v. Condley,* 62 Kan. 853, 62 Pac. 663.)

In 39 Cyc. 1241, 1243, it is said:

"Acceptance must be made and conditions performed within the time, if any, limited by the option in order to constitute a contract of sale, time being of the essence in such contracts. . . . The time within which the offer is to be accepted may be extended by the parties either

expressly or by their conduct in treating the option as still in force; but such extension may be withdrawn before acceptance unless made upon a consideration."

It can not be held that Samuelson at any time was bound to sell the farm at the advance offered by Palmer in his written obligation. Passing by·the various extensions to the one expiring February 26, 1913, the district court was bound to hold that there was no acceptance sufficient to bind Palmer nor any made within the term of the last extension.

No reversible error appearing, the judgment must be affirmed.