No. 27,047.

J. R. GRABER, Doing Business as THE J. R. GRABER HARDWARE COMPANY, *Appellee*, v. THE STAR HARDWARE COMPANY, P. J. KREHBIEL, B. P. GRABER, R. C. VORAN, B. S. WEDEL AND P. A. GRABER, *Appellants*.

SYLLABUS BY THE COURT.

1. BILLS AND NOTES—*Consideration—Evidence—Agreement Not to Engage in Business.* In an action to recover on promissory notes which have been executed in payment for a stock of hardware, where the defense was that the sale of the hardware and execution of the notes had been induced by an oral agreement of the seller not to reëngage in the hardware business in the same vicinity, the evidence examined, and held sufficient to sustain special findings that the plaintiff was the sole owner of the business when sold; also that he was not interested in a new concern organized some months later to engage in the hardware business in the same vicinity; also that he had not reëntered the hardware business.

2. EVIDENCE—*Parol Evidence to Vary Written Agreement—Agreement Not to Engage in Business Ancillary to Contract of Sale.* A contract not to engage in a business in a certain vicinity is ancillary to a contract for the sale of such business and when the contract for the sale of the business is in writing, its terms cannot be altered or varied by parol evidence.

3. BILLS AND NOTES—*Consideration—Oral Agreement Varying Written Contract.* Two promissory notes were executed in part payment for a stock of hardware which was sold under a written contract which contained no provision that the seller would not reëngage in the hardware business in the same vicinity. A defense to the notes that the sale of the hardware business and the execution of the notes was induced by an oral agreement of the seller not to reëngage in the hardware business was unavailing.

Appeal from Kingman district court; GEORGE L. HAY, judge. Opinion filed January 8, 1927. Affirmed.

*Frank L. Martin* and *James N. Farley*, both of Hutchinson, for the appellants.

*S. S. Alexander*, of Kingman, for the appellee.

Bills and Notes, 8 C. J. pp. 1026 n. 97, 1049 n. 25. Evidence, 22 C. J. pp. 1120 n. 89, 1169 n. 22, 1172 n. 36, 1217 n. 68; 10 R. C. L. 1016.

Graber v. Star Hardware Co.

The opinion of the court was delivered by

HOPKINS, J.: The action was one to recover on two promissory notes which had been executed as part consideration for a stock of hardware at Pretty Prairie. The defense was that the purchase of the hardware was induced by an agreement of the seller not to reënter the hardware business at Pretty Prairie, which it was alleged had been broken. Plaintiff prevailed and defendants appeal.

The plaintiff and defendants were engaged in business at Pretty Prairie, plaintiff operating under the name of the J. R. Graber Hardware Company. Negotiations to sell one to the other were commenced and carried to consummation in order that there be but one hardware establishment in the town. After several conversations, a contract was entered into, the pertinent parts of which are as follows:

"Witnesseth: That the said (first) parties do hereby agree to sell and convey to said second parties, the following-described property, to wit: Entire stock of merchandise of the J. R. Garber Hardware company, of Pretty Prairie, Kan., consisting of shelf hardware, heavy hardware and implements. It is agreed that [for] all shelf hardware, stoves, separators, washing machines and heavy hardware the second party will pay current wholesale net prices, F. O. B. Kansas City, Mo. It is agreed that the second party will pay current wholesale net prices, less 20 per cent F. O. B. Kansas City, Mo., for all new implements and gas engines, all implements and merchandise to be complete. It is agreed that all secondhand and obsolete goods will be appraised by two disinterested parties, chosen by first and second parties. Second parties to pay $50 for two 16-foot counters and three show cases. For and in consideration of the above, the second party agrees to pay the following: Cash $500 on contract; $1,000 upon completion of invoice; Balance in sixty days excepting implements. Implements are to be paid for as follows: By notes one-half of purchase price on July 1, 1925, and balance on September 1, 1925 Notes to be acceptable to first party. Invoice to be made between December 25th and January 1st, 1925."

The Graber company closed out its business and delivered its stock to the defendants. Some months afterwards, the G. W. Supply Company opened up and began a hardware business in Pretty Prairie. It was alleged by the defendants that J. R. Graber and Bernard Graber originally operated the hardware business as The J. R. Graber Hardware Company, and that after the sale to the defendants and the execution of the contract between them, J. R. Graber, Bernard Graber, Albert Graber and Joe Wenzel organized the G. W. Supply Company to conduct a hardware business in

Pretty Prairie. Plaintiff contended that J. R. Graber was sole owner of the original business conducted under his name and that he had no interest in the G. W. Supply Company and had not reëntered the hardware business. In some respects the evidence was conflicting. The facts found by the court were in substance that an invoice was made and notes given in accordance with the contract; that J. R. Graber was the sole owner of the J. R. Graber Hardware Company; that Bernard Graber was employed at a monthly salary; that the G. W. Supply Company was a partnership consisting of Bernard and Albert Graber and Joe Wenzel; that J. R. Graber had no interest therein; that defendants knew when they signed the contract that a good-will clause was not embodied therein nor an agreement not to reënter the business; that J. R. Graber had no intention of reëntering the hardware business at the time of the execution of the contract; that B. R. Graber and Albert Graber endeavored to find a location for a hardware store at Pratt and elsewhere; that J. R. Graber did not become a member or partner of the G. W. Supply Company; that on March 20, 1925, the G. W. Supply Company signed a written lease wherein it was recited that G. W. Supply Company consisted of B. R. Graber, Albert Graber and Joe Wenzel.

The defendants contend that the court erred in refusing findings to the effect that the inducement for the defendants to purchase the stock of goods for which the notes were given was that defendants were to obtain certain agency contracts held by the plaintiff and that the plaintiff would not reënter business at Pretty Prairie.

Touching the question of good will, one of the defendants testified as follows:

"Q. You knew at the time of signing the written contract of sale that there was nothing in it about good will, didn't you? A. I knew it was left out.

"Q. You knew it wasn't in there. And it was left out because of your agreement that it was to be left out, wasn't it? A. Well, yes, it was agreed to be left out.

"Q. You read it before you signed it or heard it read? A. Yes.

"Q. You all signed it up there? A. Yes."

The other defendant testified:

"Q. You knew when you signed that contract that there wasn't anything said in there about good will, didn't you? A. Yes."

On the question of whether the younger Grabers were interested in the original business when it was sold, the plaintiff testified:

"Q. Did Bernard draw any salary while he worked in the store for you? A. Well, yes, when he first went in the store, he was under age and didn't draw any salary then.

"Q. He was under age and didn't draw any salary up until he was of age? A. No, sir.

"Q. And then what did he draw as salary after he was of age? A. From then after—from then on after he was of age I paid him a hundred dollars a month.

"Q. You paid him one hundred dollars a month? A. Yes, sir.

"Q. Did Bernard ever have any stock or interest—any interest in the business itself at any time? A. No, sir.

"Q. Prior to the sale? A. No, sir. "

"Q. Did Albert? A. No, sir."

On the question as to whether plaintiff was interested in the G. W. Supply Company, afterwards organized, plaintiff testified:

"Q. Have you any interest in the G. W. Supply Company and did you ever have any interest in that business? A. No, sir.

"Q. Got any now? A. No, sir.

"Q. Did you ever have any interest in that business? A. No, sir.

·　·　·　·　·　·　·　·　·　·　·　·

"Q. Who does the G. W. Supply Company stand for? A. Wenzel and Graber, I suppose.

·　·　·　·　·　·　·　·　·　·　·

"Q. Well, were you interested any in that G. W. Supply Company? A. No, sir.

"Q. Did you ever have a dollar in it of your own money? A. No, sir."

A further recital of the evidence would avail no useful purpose. It amply sustained the court's finding and no error was committed in refusing the findings requested by defendants. Nor was it error to deny a rescission of the contract prayed for by defendants. The oral negotiations preceding the signing of the written contract between the parties were merged therein. The terms of the contract could not be altered or changed by parol evidence. In the recent case of *Tong v. McArthur,* 121 Kan. 870, it was held:

"A contract not to engage in a business, in a certain vicinity for a limited time, is ancillary to a contract for the sale of such business. It can have no validity if made alone. When a contract for the sale of a business is in writing, parol testimony of a contemporaneous oral contract that the seller will not engage in such business in the vicinity within a fixed time, cannot be received." (Syl. See, also, *Milich v. Armour,* 60 Kan. 229, 56 Pac. 1; *Trice v. Yoeman,* 60 Kan. 742, 57 Pac. 955; *Samuelson v. Palmer,* 96 Kan. 587, 152 Pac. 627; *Trust*

*Co. v. Danforth,* 103 Kan. 860, 177 Pac. 357; *Naftzger v. Buser,* 106 Kan. 115, 186 Pac. 997; *Macksville State Bank v. Ehrlich,* 119 Kan. 796, 241 Pac. 462; 22 C. J. 1169, 1171, 1217.)

What has been heretofore said disposes of the contention that defendants should have been allowed to rescind the contract because of failure to transfer certain dealer's agency contracts. It is clear from the evidence and findings that J. R. Graber was the sole owner of the J. R. Graber Hardware Company. Also, that he has not re-entered the hardware business in Pretty Prairie. The record discloses no error.

The judgment is affirmed.