No. 37,323

LORIN F. ROSENBERGER and MARY FRANCES ROSENBERGER, *Appellants*, v. T. LIVINGSTON and RAY F. LIVINGSTON, *Appellees*.

(200 P. 2d 329)

Opinion filed December 11, 1948.

*Homer V. Dooing,* of Wichita, argued the cause, and *Howard T. Fleeson, Wayne Coulson, Paul R. Kitch, Dale M. Stucky, Donald R. Newkirk,* and *Manford Holly,* all of Wichita, were with him on the briefs for the appellants.

*George C. Spradling,* of Wichita, argued the cause, and *Joseph G. Carey, W. F. Lilleston, Henry V. Gott,* and *George Stallwitz,* all of Wichita, were with him on the briefs for the appellees.

The opinion of the court was delivered by

HARVEY, C. J.: This was an action framed in tort for damages alleged to have resulted from defendants' fraud in inducing plaintiffs to purchase certain real and personal property. The trial court sustained defendants' demurrer to plaintiffs' third amended petition and they have appealed.

The allegations of the petition may be summarized or quoted as follows: That the parties are residents of Sedgwick county; that by fraud practiced by defendant, as later stated, plaintiffs were induced to purchase a certain greenhouse and nursery belonging to defendants located at 3845 Arkansas avenue in Wichita. The purchase was made under a written contract dated February 22, 1946. By this contract the defendants here agreed to sell and convey by warranty deed to the plaintiffs here "the following Real Estate, situated

in Sedgwick County, State of Kansas, to-wit," describing a tract of land by metes and bounds, which was about 150 feet wide and 625 feet long, for the consideration of $8,500. Provisions were made for the times of the payment of the purchase price, the furnishing of abstracts and deed, and for adjusting and prorating, as of the date of closing the transaction, of rentals, insurance and interest, if any; the—

"Transfer to include all nursery and greenhouse stock remaining on the premises June 1st, 1946; transfer all tools, equipment and appurtenances used in the conduct of the nursery and greenhouse business. Appurtenances shall specifically include all specially prepared soil, leaf mold, compost, and similarly prepared propagation materials. All personal property of the first part to be removed from the premises on or before June 1st, 1946, and possession to be given June 1st, 1946."

The petition alleged that defendants are husband and wife and had operated the business under the name of "T. Livingston Nursery and Rose Garden" for a number of years; that they were both engaged in the conduct and management of the business; that from about February 28, 1946, to the date of the contract plaintiffs had assisted defendants in their operations and became familiar with the nature of the business and the extent of the trade; that—

"In negotiating said sale and as the inducement therefor and for the purpose of obtaining a high price for said property, defendant T. Livingston orally represented to plaintiffs that due to his age and poor health he was going to have to retire and that as soon as he could make sale of said property he was going out of the retail business; that he had built a substantial business of which he was proud and which he hoped someone could maintain and carry on; that if sale of said property was made, defendants were going to build a small sash house on a tract owned by him immediately south of said nursery where he and his wife would engage in small scale production of chrysanthemum cuttings for sale at wholesale and in the sale of berries, berry plants and fruit produced from said adjacent tract, and in the manufacture of plant pot manufacturing equipment; that defendants were no longer able to wait on the retail trade and that if plaintiffs purchased said property, defendants would discontinue the retail nursery and greenhouse business."

That the representations were oral and were made in the presence of Ray F. Livingston first about February 28, 1946, and on subsequent occasions to the date of the execution of the contract; that after the execution of the written contract defendants erected the sash house, which was completed sometime after July 1, 1946, and about September 1 of that year they started the sale of chrysanthemums at retail, and during the fall placed orders for complete nursery and greenhouse stock for sale during the following season;

that in the spring of 1947 the stock was made ready and displayed, and sales at retail on a large scale were started; that trade was attracted by the use of a large sign, "Livingston's 3825 Ark. Ave., Ray Livingston Retail, Plants, Shrubs, Roses & Mums; T. Livingston Wholesale, Mums & Plants, Mfg. Pot Machine"; that defendants have jointly operated the retail business on a large scale to the time of filing this action; that the business of defendants is so situated that it obstructs the view of persons from the south to plaintiffs' property and is so laid out as to appear to be a part of defendants' former business, and by reason thereof defendants are able to attract and hold the trade to the exclusion of plaintiffs; that T. Livingston is approximately seventy-five years of age and because of the representations, statements and promises of defendants, previously alleged, on which plaintiffs relied as true, plaintiffs purchased the property; that all of said representations were false and were known by defendants to be false at the time they were made, and by reason thereof plaintiffs have suffered actual damages in the sum of $5,000 and punitive damages in the sum of $10,000, for which plaintiffs prayed judgment.

Counsel for appellants correctly state in their brief:

"It (the contract) covers sale and purchase of physical properties only, making no mention of good will or of any agreement on the part of the defendants not to engage in competition with plaintiffs."

They further state:

"The appellants are not seeking in this action to enforce the alleged oral promise nor to recover damages for its breach. The damages they seek are for the harm done to them by appellees in inducing them by fraudulent representations to enter into and complete a contract of purchase."

They rely heavily upon A. L. I., Restatement of Contracts, § 473:

"A contractural promise made with the undisclosed intention of not performing it is fraud."

This is one section of chapter 15 dealing with fraud and misrepresentation and contains sections 470 to 491, inclusive. Section 476 in part reads:

"Where a party is induced to enter into a transaction with another party that he was under no duty to enter into by means of the latter's fraud or material misrepresentation, the transaction is voidable as against the latter. . . ."

It will be noticed that the plaintiffs are not attempting in this action to avoid the contract because of the alleged fraudulent rep-

resentations. Neither is it an action in which plaintiffs claim they paid more than the property was worth because of the fraud and in which they are endeavoring to recover a part of the purchase price paid.

Appellants also rely heavily upon A. L. I., Restatement of Torts, § 525, which reads:

"One who fraudulently makes a misrepresentation of fact, opinion, intention or law for the purpose of inducing another to act or refrain from action in reliance thereon in a business transaction is liable to the other for the harm caused to him by his justifiable reliance upon the misrepresentation."

This is the first section of chapter 22, sections 525 to 552, inclusive, dealing with deceit in business transactions, in which section 549 treats of.the measure of damages as follows:

"The measure of damages which the recipient of a fraudulent representation is entitled to recover from its maker as damages under the rule stated in § 525 is the pecuniary loss which results from the falsity of the matter misrepresented, including (a) the difference between the value of the thing bought, sold or exchanged and its purchase price or the value of the thing exchanged for it, and (b) pecuniary loss suffered otherwise as a consequence of the recipient's reliance upon the truth of the representation."

In the comments on that section (p. 110) it is said:

"Under the rule stated in this Clause the recipient of a fraudulent misrepresentation is entitled to recover from its maker only the actual loss which because of its falsity he sustains by his action or inaction in reliance upon it. If notwithstanding the falsity of the representation the thing which a vendee acquires is of equal or greater value than the price paid and he has suffered no harm through using it in reliance upon its being as represented, he has suffered no loss and can recover nothing. . . . Thus, where A induces B to purchase a parcel of farm land by falsely representing that it contains valuable mineral deposits B is not entitled to recover anything if the land as farming land is worth as much as the price paid although had it contained the minerals represented it would have been worth much more. . . ."

We think this illustration fairly presents the most that can be said in favor of plaintiffs under their petition. They are not contending that the property they bought was not worth what they paid for it. The comment continues:

"If the fraudulent misrepresentation is so made as to constitute a warranty, the person acting in reliance upon it may of course waive the fraud and bring an action on the warranty, in which case the measure of damages is that appropriate to a warranty. . . ."

It is quite clear that in the petition before us plaintiffs are not relying on a warranty, neither are they seeking to recover damages

for the breach of a warranty, nor are they seeking to reform the contract. In short, they are not seeking any relief outlined by chapter 15, Restatement of Contracts, or by chapter 22, Restatement of Torts.

From what has been said it seems clear that plaintiffs have not stated a cause of action for deceit under the chapters of A. L. I., Restatement of Contracts or Torts, relied upon.

While plaintiffs have not predicated their action upon contract we shall not treat that phase of the question further than to say that since there was a written contract here which contained no provision limiting the right of the defendants to go into business at any time or place, parol evidence of prior statements of defendants on that point could not be received. (See *Graber v. Star Hardware Co.*, 122 Kan. 416, 251 Pac. 1116, and authorities there cited.)

The result is the judgment of the trial court should be affirmed. It is so ordered.

PRICE, J., not participating.