Stevens v. Inch.

No. 20,211.

GUSTA STEVENS, *Appellant*, V. CLARA E. INCH, as Executrix, etc., *Appellee*.

### SYLLABUS BY THE COURT.

PROMISSORY NOTE—*Oral Agreement That Note Was Not to be Paid— Such Agreement Void*. The plaintiff sold her interest in a failing mercantile business to her partner who was without funds, but who hoped to save the business and pay the plaintiff $1000 in three years. The purchaser offered to give a note for the amount but the plaintiff's agent told her if she did so her commercial rating would be affected, she would have no credit, and her creditors would throw her into bankruptcy. To avoid this the purchaser's mother and brother signed the note under an oral agreement that it was a mere form, that the debt would be considered the debt of the purchaser, that she could pay it out of the business, and that if she were unable to do so the makers would not be called on to pay. *Held*, the note was not unenforceable because of fraud and the written instrument was not impeachable by the contradictory oral agreement.

Appeal from Labette district court; ELMER C. CLARK, judge. Opinion filed June 10, 1916. Reversed.

*Nelson Case*, of Oswego, for the appellant.

*E. L. Burton, George F. Burton*, and *J. W. Iden*, all of Parsons, for the appellee.

The opinion of the court was delivered by

BURCH, J.: E. T. Inch and Laura B. Inch gave their promissory note to the plaintiff for $1000. On the death of E. T. Inch the note was presented as a demand against the estate. An appeal was taken from the judgment of the probate court. In the district court the judgment and verdict were against the plaintiff and she appeals. The plaintiff and Gwendola Inch were partners in mercantile business. The plaintiff's interests were looked after by her husband, W. H. Stevens, and the business was conducted by Miss Inch. The business was not prosperous and Miss Inch went to Kansas City and talked to some of the firm's creditors. They complained of W. H. Stevens and told her they would extend her credit if she desired to go ahead with the business, but would not do so while

Stevens was connected with it. This led to negotiations for a sale of the plaintiff's interest to Miss Inch. Stevens conducted the negotiations for his wife. Miss Inch had no funds with which to make the purchase, but hoped she might be able to save the business and pay the plaintiff $1000 in three years. She offered to give a note to the plaintiff for that sum, but Stevens told her if she gave a note her commercial rating would be affected, she would have no credit and her creditors would throw her into bankruptcy. He proposed that Miss Inch's mother and brother, Laura B. Inch and E. T. Inch, give a note for $1000 payable in three years, which was done. He stated that the note was a mere form and agreed with the makers that the debt would be considered the debt of Miss Inch, that she could pay it out of the business of the store, and that if she were unable to do so the makers would never be asked to pay the note. After the note was signed the plaintiff executed and delivered to Miss Inch a bill of sale of the stock and fixtures. The fixtures were worth about $1000. The value of the stock was not shown. The firm liabilities were about $2000. Afterwards Miss Inch became bankrupt. The negotiations consummated by the note and bill of sale were oral.

The defense was that the statements and representations of Stevens were made for the fraudulent purpose of securing the signature of the decedent, E. T. Inch, to the note, and for the purpose of defrauding the creditors of Gwendola Inch. The court instructed the jury that if they found the facts according to the theory of the defense the plaintiff could not recover. The plaintiff objected to the parol evidence on which the defense rested, moved to strike it out, and asked that the jury be instructed to disregard it. Stevens denied the statements and promises attributed to him.

The giving of the note by the makers instead of by the debtor, Miss Inch, had no effect on her creditors, existing or prospective. Some of them, at least, had suggested to Miss Inch that they would extend her credit if she wanted to go ahead, but not while the Stevens were in the firm. How she could acquire their interest without increasing her liabilities is not apparent. Without this, however, the note afforded Miss Inch no additional means of deceiving her creditors. She could keep a note out of any statement of her liabilities which she

might make as well as the indebtedness in fact incurred by buying out her partner. Unless the contingency occurred of being required to make a statement of liabilities for the purpose of credit, and unless she responded with a false statement to maintain her rating or obtain credit, no creditor could be defrauded.

It does not help the defense to call the statements and promises of Stevens fraudulent. The books teem with cases involving oral promises that notes need not be paid, or are mere memoranda, or will be surrendered without satisfaction, or may be paid out of the profits of a business venture if successful, and need not be paid otherwise. In all such cases the promise is made to induce the maker to sign the note, and if the promise be not kept it works a fraud. The theory of the law is that more fraud would result if all notes were open to qualification and contradiction by parol evidence than if the door were closed and locked against such evidence. Consequently to defeat liability on a note because obtained by fraud the fraud must consist in something else than representations and promises of the kind referred to.

Some credits are indorsed on the note. The plaintiff's daughter purchased goods at the store to the amount of $138. There was no proof that these purchases were unauthorized or that the plaintiff was not liable for them, and the amount should be credited on the note.

The judgment of the district court is reversed and the cause is remanded with direction to render judgment for the plaintiff.