No. 22,458.

W. H. UNDERWOOD, *Appellee* and *Appellant*, v. JAMES VILES (et al.), *Appellant* and *Appellee.*

SYLLABUS BY THE COURT.

1. PROMISSORY NOTE—*Unconditional Promise to pay—May Not Be Defeated by Parol Evidence.*—In the organization of a corporation, the plaintiff executed to the defendant a promissory note as payment for shares of the capital stock of the company. On its face the note was an absolute and unconditional promise to pay on demand. It was claimed by plaintiff that there was an oral agreement to the effect that the note was to be paid out of the profits of the corporate business and not otherwise. *Held*, that a recovery on the note cannot be defeated by parol evidence of the oral agreement or understanding, which was in direct contradiction of the terms of the instrument.

2. CORPORATION—*Organization Agreement—Money to be Furnished by Stockholder—Failure of Company—Liability for Money Advanced.* In the organization of the company, it was understood that more money would be needed in the business than was derived from the sale of the capital stock, and there was an understanding that defendant would furnish or borrow the additional money for the company, but there was no agreement as to how much or for how long a time he would furnish or borrow the additional money. For about seven years he borrowed or furnished money for the company in a large amount, and then refused to provide further money for the business. After that time the plaintiff borrowed a considerable sum of money to be used in the business on the credit of the company, and for which he became personally liable, but the money so furnished was not more than one-third of that which had been provided by the defendant. The company failed, and in an accounting between the parties, it is held that the amount so provided by the plaintiff is a liability of the company, and that he is not entitled to recover the same from the defendant.

3. CONTRACT—*Planting and Cultivation of Catalpa Trees.—Agreement Terminated—Accounting Between Parties.* Plaintiff and defendant entered into an agreement that defendant would buy a tract of land on which to plant catalpa trees, and that plaintiff would plant and cultivate the trees, he to receive 25% of the profits derived from the plantation. The land was purchased by the defendant, and the trees were planted and cultivated by the plaintiff until they were ready for cutting, but before any profits had been derived from the joint venture, defendant arbitrarily terminated the agreement and relationship, took possession of the plantation and excluded the plaintiff from his part in carrying out the agreement. *Held,* that plaintiff was entitled to treat the agreement as ended and recover from defendant the value of the services he had rendered in cultivating and caring for the plantation.

Appeal from Reno district court; E. T. FOOTE, judge *pro tem.* Opinion filed February 7, 1920. Modified and affirmed.

*F. L. Martin, John M. Martin,* and *Walter F. Jones,* all of Hutchinson, for the appellant.

*C. M. Williams,* and *D. C. Martindell,* both of Hutchinson, for the appellee.

The opinion of the court was delivered by

JOHNSTON, C. J.: In this action an accounting was asked between W. H. Underwood and James Viles, who has since deceased, and the executor of his estate has been named as defendant, as well as two other parties who had a nominal interest in some of the transactions involved. The transactions included the business of the Underwood-Viles Cold Storage Company, the cultivation and operation of a catalpa plantation, and an apple orchard. The court rejected the plaintiff's claim of $23,000 which he contributed toward the cold-storage business, refused to allow the defendant James Viles a credit upon a promissory note executed by the plaintiff in his favor, and held the plaintiff was indebted to Anna U. Viles for $470, for rent which he collected upon her building, and concluded that James Viles was indebted to the plaintiff in the sum of $12,000, for services rendered in developing and caring for the catalpa plantation. The plaintiff and the defendant, James Viles, both appeal.

In behalf of James Viles, it is contended that he was entitled to a credit on the $4,000 note executed by the plaintiff in his

Underwood v. Viles.

favor. That note was given in connection with the organization of the cold-storage company. It appears that in 1902 the plaintiff and Viles entered into an agreement to engage in the cold-storage business. To that end a company was organized with a capital stock of $10,000, and it was agreed that plaintiff would furnish the capital and sell to plaintiff forty shares of the stock at its par value, and plaintiff was to give his note in payment of the stock. The stock was sold, and the note for $4,000 was given in accordance with the agreement. It was dated April 1, 1903, due after date with interest at 5% per annum until paid. It appears that both parties expected the business to be profitable, and there was an understanding that the note would be paid out of the profits of the business.

We will first consider the ruling denying Viles a credit on the $4,000 note. On its face it was an absolute promise to pay a definite sum of money on demand with interest at a specified rate. Viles contends with good reason that such an obligation cannot be varied or contradicted by parol evidence to the effect that it was not enforceable according to its terms or that payment could only be required from a particular source or on some possible contingency. The case of *Carter v. Wilson,* 102 Kan. 200, 169 Pac. 1139, cited by plaintiff, does not apply, as the note there involved was given upon certain conditions, and no question was raised as to the admissibility of the evidence relating to the conditions. In the opinion it is expressly stated that no objection was made to the evidence offered and that no challenge was made of the findings based upon the evidence. The only question presented in that case was whether the findings sustained the judgment. The question that the oral agreement contradicted the terms of the note might have been, but was not, raised, and as there held, this court can only consider such questions as are presented to the district court.

Another case relied on by plaintiff is *Miller v. Buss,* 103 Kan. 338, 173 Pac. 975. There the question was not that the offered evidence contradicted the terms of the note, but it was rather that there was not, in fact, a delivery of the note, and hence it never became a binding and enforceable obligation. That case was within the authority of *Bartholomew v. Fell,* 92 Kan. 64, 139 Pac. 1016, where it was held that as—

"Between the original parties to a written instrument the rule excluding parol evidence in contradiction of a written agreement is not infringed by proof that the instrument was never delivered, or was delivered to take effect only upon the happening of some future event." (Syl. ¶ 3.)

In cases of that character the parol evidence is not offered to contradict the note or vary its terms, but like the rule in *Miller v. Buss,* supra, it goes to the point that the writing never, in fact, became a note or an enforceable obligation. In the case under consideration the evidence was in direct contradiction of the terms of the instrument. It imported an absolute promise to pay on demand, while the oral understanding was to the effect that the note was not to be paid unless it could be paid out of the profits of the cold-storage business. The case comes fairly within the rule of *Van Fossan v. Gibbs,* 91 Kan. 866, 139 Pac. 174, where it was held that:

"An unconditional promise in writing to pay a certain sum of money at a fixed time cannot be defeated by parol evidence of a prior or cotemporaneous oral agreement that the obligation, which was not otherwise assailed, was to be paid out of profits of a business to be launched by the use of money for which it was given." (Syl.)

In a later case where parties executed a promissory note, absolute and unconditional in form, with the understanding that another would pay it out of the profits of a business, and that it need not be otherwise paid, it was held that the note could not be impeached by the contradictory oral agreement. It was there said:

"The books teem with cases involving oral promises that notes need not be paid, or are mere memoranda, or will be surrendered without satisfaction, or may be paid out of the profits of a business venture if successful, and need not be paid otherwise. In all such cases the promise is made to induce the maker to sign the note, and if the promise be not kept it works a fraud. The theory of the law is that more fraud would result if all notes were open to qualification and contradiction by parol evidence than if the door were closed and locked against such evidence. Consequently to defeat liability on a note because obtained by fraud the fraud must consist in something else than representations and promises of the kind referred to." (*Stevens v. Inch,* 98 Kan. 306, 308, 158 Pac. 43.)

Other authorities of like effect are: *Bank v. Manning,* 60 Kan. 729, 57 Pac. 949; *Thisler v. Mackey,* 65 Kan. 464, 70 Pac. 334; *Knote v. Bense,* 94 Kan. 294, 146 Pac. 363; *Bank*

*v. Paper Co.,* 98 Kan. 350, 158 Pac. 44; *Bank v. Watson,* 99 Kan. 686, 163 Pac. 637; *Naftzger v. Buser,* ante, p. 115, 186 Pac. 997.

The contention by plaintiff that the court should have allowed him for the money he advanced to the cold-storage company cannot be sustained. He insists that because Viles had said he would borrow or provide the additional money needed to carry on the business, he should be held liable for the amount furnished by plaintiff. When the company was organized there was an understanding that more than the $10,000 of capital would be needed to carry on the business, and there was an understanding that Viles would furnish or borrow it for the company. Until about 1909 additional money was furnished by Viles from time to time to the extent of $62,941.51, but there was no agreement as to how much money he would furnish nor for how long a time he was to furnish it. For this amount he was given a credit on the books of the company, but no part of it was ever paid to him. At the time mentioned, he refused to furnish any more money to the company, and thereafter the plaintiff borrowed the money from local banks, and these banks required him to indorse the paper. Finally, in order to continue the loans, the plaintiff gave a mortgage on farm lands which he owned to secure the payment of $23,000 that he had borrowed for the company. The amount thus obtained by plaintiff was credited to him upon the books of the company. There were charges against him upon the books which reduced this amount to $15,932.33. When these moneys were borrowed by plaintiff, and when he mortgaged his farm in order to secure their payment, nothing was said to James Viles about his repaying the plaintiff this money in case it was not repaid by the company. Plaintiff was credited upon the books for the amount thus paid in to the company. The company was carrying on a separate corporate business, and the money contributed by each towards it was furnished to the company. The plaintiff was acting as president and manager of the company, and for his services in these capacities he was to be paid $100 per month. He managed the company from the time of its organization until 1913, when it became insolvent and ceased to do business. The money provided by plaintiff to carry on the business of the

company was a liability of the company itself. It was borrowed and furnished by plaintiff with the knowledge that Viles had refused to advance any more money for the purpose. Viles had furnished a large amount, no part of which had been repaid to him, and it was manifest then that there was little likelihood of any payment in the future, and so he expressly declined to contribute more money for a losing business. Plaintiff owned two-fifths of the stock in the company, and Viles the remaining three-fifths of it, and as we have seen, he provided much more than three-fifths of the money necessary for the conduct of the business. In view of the fact that he had refused to borrow or furnish more money and had not agreed to pay or refund to plaintiff that borrowed by him, there is no personal liability of Viles for the amount, and plaintiff must look to the company for repayment.

An orchard transaction which turned out to be unsuccessful was involved in the litigation, but this has been taken out of controversy by a statement of the plaintiff that he expressly waives any claim which he might have by reason of his services in planting and developing the orchard.

There remains the allowance that was made for plaintiff's services performed in the cultivation and care of the catalpa plantation. In 1902 an agreement was made between plaintiff and Viles under which the plaintiff was to select a body of land for growing catalpa trees, and to procure catalpa plants which were to be paid for by Viles. It was agreed that plaintiff was to plant the catalpa trees and cultivate the same until they grew to be large enough for fence posts, telephone poles, and the like, and for his services he was to receive 25% of the profits of the plantation. There was no agreement about how long the employment should continue, but it was understood that it would continue for more than one year. Shortly after the agreement was made, plaintiff selected eight hundred acres of land near the city of Hutchinson and set it in catalpa plants and cultivated and cared for them until January, 1915. At that time Viles claimed the right to terminate the agreement and the relationship that existed between them and to exclude plaintiff from the possession of the plantation. He then took possession of the plantation, and since that time the plaintiff has had no part in its control and has rendered

no further services upon it.  Up to the time that Viles took possession of the plantation no profits had been derived from it, and hence the plaintiff had received no benefits from the joint venture.  It appears that it takes from eight to twelve years to grow catalpa trees fit for posts and poles, and there was no reason to expect returns from the plantation at an earlier period.  When Viles took possession, some of the trees were ready to cut and had reached such a stage that the plantation would be highly profitable in the years to come.  A second cutting may be had from eight to twelve years after the first, and successive cuttings may be had indefinitely within these periods.  During the twelve years that plaintiff had been caring for and developing the trees, he received no compensation for his services, and his exclusion from any connection with the plantation deprives him of any profits that may be derived from the plantation.  The facts recited are obtained from the findings of the trial court, which appear to be well supported by the evidence.  The abrogation of the agreement under which the catalpa venture was carried on and the exclusion of the plaintiff from the plantation, which had been developed by his labor and care, gave the plaintiff the right to abandon the agreement broken by Viles and to recover for the value of the services performed.  When Viles repudiated the agreement, the plaintiff was at liberty to take him at his word and, instead of asking for specific performance, to avail himself of a recovery upon a *quantum meruit.* In *Jenson v. Lee,* 67 Kan. 539, 73 Pac. 72, where the plaintiff had agreed to operate a ranch of the defendant for a share of the profits, the defendant broke his agreement and wrongfully prevented the plaintiff from continuing the work.  It was held that the plaintiff was warranted in treating the contract as nonexistent and in recovering the actual value of the services rendered.  The following authorities are of like import: *Usher v. Hiatt,* 21 Kan. 548; *Brashear v. Rabenstein,* 71 Kan. 455, 80 Pac. 950; *Templeton v. Biegert,* 79 Kan. 638, 100 Pac. 654.

It is true that plaintiff asked to have his interest in the plantation determined, but the facts relating to the breach of the agreement by Viles, the exclusion of the plaintiff from

the management and care of the plantation so that he was unable to carry out his contract, were set forth in the petition. The testimony sustained the averments, and the value of the plaintiff's services were sufficiently shown. The court was therefore justified in finding the value of his services and in making the allowance that was made.

We conclude the defendant is entitled to an award on the promissory note executed by the plaintiff to him, that the plaintiff is not entitled to an award from defendant for the money advanced to the cold-storage company, and further, that plaintiff is entitled to the allowance made by the trial court for his services in managing and caring for the catalpa plantation.

The case is remanded with directions to modify the judgment in accordance with the opinion herein, and when so modified, it is affirmed.