No. 22,985.

W. H. UNDERWOOD, *Appellant*, v. JAMES VILES, revived in the name of L. M. VILES, as Executor, etc., et al., *Appellees*.

SYLLABUS BY THE COURT.

1. APPEAL—*Direction to Modify Judgment—Judgment as Modified Affirmed—Set-off Denied and Mandate Followed—Res Judicata—No Error*. On the occasion of a former appeal (106 Kan. 287), this court directed a modification of the judgment of the district court. Two mathematical computations were to be made, and were to be followed by a clerical correction of the journal. This court treated those acts as already done, and affirmed the judgment as corrected. On return of the cause to the district court, the plaintiff asked, for the first time, that a set-off be made in such a way as to effect computation of interest in making the modification directed. The district court followed the mandate of this court. *Held*, the subject was *res judicata*, and obedience to the mandate did not constitute an abuse of discretion, or judicial error in any other respect.

2. QUERY—*Where Cross-demands Exist—At What Time Shall the Two Demands Be Deemed Compensated*. Query: Under section 102 of the civil code, providing that privilege of set-off shall not be defeated under certain circumstances, and providing that "the two demands must be deemed compensated so far as they equal each other," at what time shall the two demands be deemed compensated—at the time the junior demand matured, at commencement of suit in which set-off is pleaded, at date of verdict or finding by the court, or at some other time?

Appeal from Reno district court; EDWARD T. FOOTE, judge, *pro tem*. Opinion filed January 27, 1921. Affirmed.

*C. M. Williams*, and *D. C. Martindell*, both of Hutchinson, for the appellant.

*Frank L. Martin, Walter F. Jones*, and *John M. Martin*, all of Hutchinson, for the appellees.

The opinion of the court was delivered by

BURCH, J.: The appeal is taken from the judgment of the district court which this court directed to be entered in the case of *Underwood v. Viles*, 106 Kan. 287, 187 Pac. 881.

Briefly, the action was commenced in June, 1915, by Underwood, for an accounting and other relief. Each party claimed

he should have credit for various items. Among others, Underwood claimed he should have credit for moneys advanced in a cold-storage enterprise, and for the value of services rendered in managing a catalpa plantation. The first item was disallowed, and the second was allowed. Viles claimed he should have credit for an unpaid promissory note given him by Underwood. Underwood denied liability on the note, and the district court held with him. The district court made full findings of fact, which placed the controversy before this court in such form that it undertook to apply the law and end the litigation. The judgment of the district court was modified by allowing Viles credit for the note, and as modified the judgment was affirmed.

The contention of Underwood had been that the catalpa plantation was a joint venture, but that Viles excluded him from interest in it in January, 1915. Underwood acquiesced in the exclusion, and asked judgment for $1,000 per year for twelve years, as the value of services rendered as manager of the plantation. The note was dated April 1, 1903, and bore interest at the rate of five per cent per annum. When the cause was returned to the district court, Underwood asked that his unliquidated claim for services, proposed for the first time in the petition, should be offset against the note, year by year as the claim accrued, so that the note should be regarded as satisfied early in the year 1908. In the alternative he asked that his claim for services and the note be offset as of January 1, 1915. The judgment of the district court follows:

"Wherefore it is duly considered, ordered and adjudged by the court that the judgment heretofore rendered in the above-entitled cause in favor of the plaintiff for the sum of $11,530, be and the same is hereby modified in accordance with the mandate and direction of the supreme court, by allowing as a credit thereon the note of W. H. Underwood to James Viles of date April 1, 1903, for the sum of $4,000, with interest at five per cent, amounting in the aggregate to $7,200, leaving a balance due W. H. Underwood upon said judgment of the sum of $4,578.94."

The plaintiff raises a very interesting question of law, the importance of which may be indicated, but which, for reasons to be stated later, may not be decided.

Section 102 of the code of civil procedure reads as follows:

"When cross-demands have existed between persons under such circumstances that, if one had brought an action against the other, a counterclaim or set-off could have been set up, neither can be deprived

of the benefit thereof by the assignment or death of the other or by reason of the statute of limitations; but the two demands must be deemed compensated so far as they equal each other." (Gen. Stat. 1915, § 6994.)

This section is part of that portion of the civil code which relates to the answer in an action. Treatment of that topic begins with section 97, which reads as follows:

"The answer shall contain:

.  .  .  .  .  .  .  .  .  .  .  .  .  .

"*Second*, a statement of any new matter constituting a defense, counterclaim or set-off, or a right to relief concerning the subject of the action, in ordinary and concise language, and without repetition.

"*Third*, when relief is sought, the nature of the relief to which the defendant supposes himself entitled.

"The defendant may set forth in his answer as many grounds of defense, counterclaim, set-off and for relief as he may have, whether they be such as have been heretofore denominated legal or equitable, or both." (Gen. Stat. 1915, § 6989.)

The statute is clearly permissive—not compulsory. A person in position to urge a set-off may do so or not, at his pleasure, and all the authorities agree that if advantage is to be taken of the privilege, set-off must be pleaded.

The language of section 102 is, "The two demands must be deemed compensated so far as they equal each other." Must be deemed by whom? Must be deemed compensated as of what time? The statute gives no answer, and the authorities give different answers.

Under the civil law of compensation, as soon as a creditor became indebted to his debtor, or as soon as a debtor became creditor also, compensation occurred "*ipso jure*," that is, by mere operation of law, without act of the parties and without judicial pronouncement (Pothier on Obligations, part III, ch. 4, § 3). In the section of Pothier just cited it is said:

"The effects of compensation are the consequences of the principle thus established; these are 1st, that if my creditor, to whom I have given goods in pledge, becomes my debtor, I may reclaim the goods upon offering the balance, if any, in his favour; the compensation of the debt due to me being equivalent to a payment.  .  .  .

"2d. If you had a debt due from me which carried interest, and afterwards became my debtor of a sum, which from its nature did not carry interest, my debt would be held to be discharged to the extent of the mutual credit, from the time of such credit taking place, and interest would only be due for the balance from that time. For instance, if you were my creditor of a sum of 1,000 *l.* for the price of an estate

which you have sold and conveyed to me, and afterwards you become sole heir to Peter, who owed me the sum of 800 *l.* for a loan; from the time of your becoming heir to Peter, and in that quality, my debtor of 800 *l.* that is, from the death of Peter, your demand of 1,000 *l.* is to be regarded as acquitted to the amount of 800 *l.* and subsisting only for the remaining 200 *l.* and from that time the interest will only continue to run upon the remaining 200 *l.*" (1 Evans ed., page 469.)

Volume 2 of Evans' work consists of appendixes to his translation of Pothier contained in volume 1. In Number XIII compensation and set-off are discussed. The equitable basis for each is stated, and the history of set-off in English jurisprudence is traced. Then follows this significant passage, which has been freely used by courts and text-writers, sometimes without citation to the original:

"The doctrine which was thus introduced into the law of England, partakes very much of the nature of *compensation* in civil law; but there is this material difference, that the debts are not in themselves and of right balanced and extinguished; . . ." (2 Evans ed., page 97.)

This view has been accepted by a majority of the courts of the United States, and set-off is regarded as occurring by action of the court in which it is pleaded, rather than by direct action of law, operating to acquit mutual debts to the extent of their concurrence.

In some instances set-off statutes have been interpreted as virtually adopting the civil law of compensation, and cases involving interest-bearing and non-interest-bearing obligations have been adjudicated according to Pothier's second consequence of compensation. (*Meriwether and another v. Bird and another*, 9 Ga. 594; *Brown v. Montgomery*, 19 Tex. Civ. App. 548.) In some instances set-off has been adjudicated as of the date suit was commenced. In the case of *Mix v. Ellis*, 118 Ga. 345, it was said:

"If at the commencement of the suit each party has a cause of action of the same nature against the other in his own name, and in the same capacity, one demand may be set off against the other. 'For if the parties are mutually indebted, there are mutual debts.' They do not *ipso facto* extinguish one another, as at the civil law; for the defendant must plead his set-off in bar; but where this is done, and the claim is established, the result, in some degree, relates to the condition existing at the time of filing the suit, and in effect determines that the two claims had cancelled each other by operation of law, and that when the suit was filed the real cause of action was for the difference after balance struck." (p. 346.)

Other cases are to the same effect.

In the case of *Smith v. Turner,* 33 Ore. 379, the suit was on an interest-bearing promissory note. Set-off of various non-interest-bearing items was pleaded. The question was whether these items should be applied on the note as of the dates when they accrued, or whether interest should be computed on the note to date of verdict, and the items of set-off then be deducted. In the opinion it was said:

"It is well understood that interest is not demandable, under our statute, upon unliquidated claims or demands: [citing cases.] The plaintiff's claim bears interest because there is a contract to pay it, while, under the rule announced, the defendants' counterclaims do not; but it is attempted to counterclaim as respects the first separate defense as of the date when it is alleged the damages accrued, and thereby cut off the running of interest upon the note. This cannot be done, however, because it required the verdict of the jury, or at least the confession or default of the plaintiff, to liquidate the defendants' demand for their alleged damages arising by reason of plaintiff's supposed breach of contract, while the note draws interest by force of its direct stipulations." (p. 381.)

Other cases are to the same effect.

The plaintiff insists this court has decided that set-off should be adjudicated as taking place when the items of set-off accrued. In the case of *Gardner v. Risher,* 35 Kan. 93, 10 Pac. 584, Risher gave to Litzkie two interest-bearing notes, for $55 each, dated February 25, 1884, and payable respectively in two and six months. The notes were secured by chattel mortgage on a cow, worth $30. Risher made payments on the notes amounting to $61.68, and previous to October 6, 1884, had an accrued cause of action for damages against Litzkie, amounting to $85. The brief filed in the case shows these damages were mathematically computable. On October 6, Litzkie took possession of the cow. Risher protested the mortgage debt was satisfied, and demanded return of the notes. Litzkie refused to acknowledge satisfaction of the debt, and sold the cow at private sale to Gardner. Gardner was present when Litzkie took possession of the cow, and heard Risher's protest and demand. Risher brought replevin for the cow, and recovered. In affirming the judgment the court regarded the form of action as immaterial. Gardner was treated as having acted at his peril, and as a simple assignee of the notes and mortgage. His interest in the cow was stated to be whatever

was due him on the notes and mortgage, after deducting payments and offsets. His defense was treated as a claim made in the action, and as based on the notes and mortgage. Risher's set-off was regarded as relied on and pleaded in an action founded on the notes and mortgage. The set-off exceeded the debt, whether the computation were made as of October, 1884, or at the time of final trial in January, 1885. What the status of the parties would have been if the set-off would have equaled the debt, in October, 1884, but would not have equaled the debt, with interest, at date of suit or date of trial, was not considered; Pothier's first consequence of compensation was not applied; and the decision is not an authority supporting Underwood's contention.

The foregoing is without practical consequence, unless it may serve to bring to the attention of the legislature, now in session, a mischievous uncertainty in an important subject of statute law, which ought to be corrected by legislation.

Underwood must lose, on the ground of *res judicata,* the underlying reason being that he did not plead set-off in the district court. He presented no issue of fact or of law regarding the amount of credit which Viles should have in the accounting, in the event defense to the note failed. He might have done this by asking for alternative relief should the note be sustained. This court would then have had the benefit of his contention when rendering judgment. After this court rendered judgment, he might have presented his contention by petition for modification of the judgment. Under the circumstances, he is virtually appealing to this court from its own judgment, rendered in February, 1920.

The cause was not remanded to the district court for judicial action, in the proper sense of the term. Two mathematical computations were to be made, and were to be followed by a clerical correction of the journal. This court treated those acts as already done, and expressly affirmed the judgment as corrected. Whatever discretion a district court may sometimes have regarding literal obedience to a mandate specifying the judgment to be entered (*Duffitt & Ramsey v. Crozier, Judge,* 30 Kan. 150, 1 Pac. 69; *Lynn v. McCue,* 99 Kan. 400, 161 Pac. 613), obedience to the mandate issued in this case did not constitute an abuse of discretion, or judicial error in any other respect.

The judgment of the district court is affirmed.