No. 23,491.

·Charles P. Hangen, *Appellee*, v. O. H. Pinkston, *Appellant*.

SYLLABUS BY THE COURT.

1. Promissory Note—*Oral Agreement as to Manner of Payment Inadmissible.*
   The rule followed that a promissory note in the usual form cannot be contradicted by evidence of an oral agreement that it was to be paid only out of the profits of a certain business carried on by the payee.

2. Same—*No Available Defense Stated.*  Under·the allegations of the answer and the opening statement of the defendant's counsel it is held that the defense indicated by the preceding paragraph could not be successfully urged as against the payee, and hence could not avail the defendant as against the indorsee of the note sued on.

Appeal from Kiowa district court; Littleton M. Day, judge. Opinion filed February 11, 1922. Affirmed.

*J. D. Beck, C. H. Bissitt,* and *Arthur W. Hershberger,* all of Greensburg, for the appellant.
*O. G. Underwood,* of Greensburg, for the appellee.

The opinion of the court was delivered by

West, J.:  This action was brought upon a promissory note payable to the order of J. H. Taylor, signed O. H. Pinkston, and indorsed J. H. Taylor, per C. A. T.  Plaintiff alleged that he was the holder and owner in due course.

The answer, after a general denial, alleged that the plaintiff was not the owner and holder of the note, but that he was the agent and tool of C. A. Taylor and W. S. Taylor, and a bank employee in a bank where they transacted business.  It admitted the execution of the note, but alleged that it was procured in the following manner:

"That at the time this note was executed C. A. Taylor and W. S. Taylor were the principal stockholders and managers of the United Stores Company, a corporation doing business at Greensburg, Kansas, engaged in the general mercantile business; that at that time the United Stores Company held a promissory note against this defendant of similar amount executed by this defendant to said United Stores· Company, the consideration for which note was a certificate of stock in said corporation for one hundred dollars.  That this original note to the United Stores Company provided in substance on its face, that said note should not be paid in cash but that the profits and dividends accruing upon said certificate for stock should be credited from time to time upon said promissory note till it should be paid and satisfied.  That said C. A. Taylor and W. S. Taylor falsely, fraudulently induced this defendant to execute the note sued upon herein upon a representation that the execution of this note was merely a renewal of the original note to the United Stores Company and that it should be subject to the same terms, conditions and privileges and

that the maker, this defendant, and that this defendant should have all the rights, privileges and benefits under this renewal note as he had under the original note to the United Stores Company."

The answer alleged, further, that the Taylors' excuse for not using the original form of note was that they were out of that form and that—

"They desired new fresh notes for the purpose of using the same temporarily at the local banks as collateral in borrowing money to operate the store owned by the United Stores Company, and further represented and promised this defendant that the renewal note should not be negotiated or transferred or used for any other purpose than as collateral and that temporarily. And that said renewed note should remain the property and in the possession of the United Stores Company."

Further, that the Taylors so manipulated the writing on the note as to make it payable to J. H. Taylor—

"For the secret and fraudulent purpose of negotiating the same and of converting the said note to their own use and benefit, and preventing this defendant from having, and enjoying the said benefits, privileges and rights therein as were provided in the original note as aforesaid. That there was no consideration for said note to J. H. Taylor. . . . That the said plaintiff Chas. P. Hangen is not the holder and owner of said note in due course and did not obtain the said note from the said Taylors for a good and valuable consideration nor in good faith."

The court having placed the burden of proof upon the defendant, counsel in his opening statement said: "The evidence will develop that this note was given in renewal of another note, a former note. I think it was renewed twice." Also, that there was organized in Kiowa county the United Stores Company to take over the business of Taylor & Taylor, who were engaged in the general mercantile business in Greensburg, a corporation purporting to be coöperative, the profits to go to the stockholders after the expenses were paid; that the organizers went out among the people and sold stock to ninety or a hundred people and collected money or took notes—in most cases taking notes.

"They promised the shareholders, and it was printed in the note or written in the note, that the stockholders and giver of the note should be a sharer in the profits of that corporation and concern, and that the note, while it was given for a definite time . . . was not to be paid in money at the time set on the face of it, but the profits and dividends coming back to the shareholders out of the profits of this store as they traded there should be credited on this note until this note was finally paid. . . . The note was given, however, for a definite length of time. . . . About the time it became due, . . . they

went out to these farmers and said, here, your note on the face of it is due; that is, the time mentioned in this note when it should be paid has arrived, but we don't want you to pay the note in money, but we do want a new note so these notes on the face of them will be live notes and not past due notes, and in most instances they got renewal notes. In this instance they got a renewal note from O. H. Pinkston, for certain length of time, written on the same kind of a form that the first note was written on and made payable to the United Stores Company, a corporation. Then they came back to him again after that had run along some time, . . . and said, here, we want you to renew this note again, and want you to make us another note that will be due sometime later on the face of it. . . . He said, I don't want to sign a straight negotiable note; I want to sign the kind of a note I gave in the first instance; . . . Taylor & Taylor said to him, we are out of that printed form of note; we are just out of them; we haven't got any more of them now and so we will just take it on this form of note. . . . Mr. Pinkston objected and said, 'I don't like to give that kind of a note because it might be negotiated and transferred, then I would have to pay the cash on it when it became due.' 'No, no,' Taylor & Taylor told him, 'It won't be negotiated; we don't want to negotiate it; we won't transfer it. We want to hold the note and it will be payable just like the other ones; it will be subject to all the conditions as that original note that you gave.' They presented him this note and under those promises and those explanations and excuses, and not taking legal advice in the matter, he signed this note and gave it to Taylor & Taylor, and they made this note payable not to the United Stores Company but made it payable to J. H. Taylor. J. H. Taylor, the evidence will show, was the father of C. A. Taylor and W. S. Taylor, who was running and operating this United Stores Company; that is, they were the owners of it and the principal stockholders in it. Then the next thing that happened was this note turned up claimed by the plaintiff in this case, Chas. P. Hangen. He has been cashier or an officer of some kind in a bank at Wellington. . . . When they left, they took a lot of these notes with them, and among them this one, and they turned it over to Mr. Hangen and said 'we want you to collect that note,' and endorsed it on the back, 'J. H. Taylor per C. A. Taylor.' J. H. Taylor didn't even endorse it in person but it was done by C. A. Taylor, which I take it, was C. A. Taylor, one of the Taylor brothers that had been interested in this store. . . . We expect the evidence will show that . . . Chas. P. Hangen didn't pay anything for this note. . . . He simply took it to try to collect it; that is, apparently he did that. . . . In other words they are simply using Hangen's name to collect this note under the pretense they transferred it to him and sold it to him when as a matter of fact they haven't."

After the foregoing statement was made the plaintiff moved for judgment on the opening statement and the court said:

"Gentlemen, I don't think you are entitled to raise this defense at all in this case. I will sustain this motion and render judgment for the plaintiff on the pleadings and opening statement to the jury. The jury is excused from further

30—110 Kan.

consideration of this case and judgment is rendered for the plaintiff for the amount of the note with interest and costs."

The entire story about the original notes showing on their face that they were to be paid by dividends, and about the one sued on, and procuring a verbal promise that it should likewise be paid, amounts to nothing by way of defense. The very fact that the defendant objected to signing the form of note used for fear it would turn up against him, and the further fact that persons procuring the notes said that they wanted them to use as collateral at the bank, were sufficient to show that thus far no defense is stated. The only question is whether or not the opening statement was sufficient to raise a fair jury question whether or not the plaintiff was the holder and owner in due course. The allegations of the answer were verified by the defendant and asserted that the Taylors procured the note fraudulently and then connived with Charles P. Hangen and used him as a means to collect it for their use and benefit. The answer contains the following:

"That the said plaintiff, Chas. P. Hangen is not the holder and owner of said note in due course and did not obtain the said note from the said Taylors for a good and valuable consideration nor in good faith."

If the answer and opening statement furnished any basis for defense against the payee of the note this would be sufficient to raise the question of the plaintiff's right to sue, but if the defendant could not resist payment as against the payee he certainly could not as against the endorsee. It is really the old story of listening to a lot of persuasion and then signing one's name to a piece of commercial paper to be started into circulation bearing upon its face the usual evidence of legality and binding force.

It is true that sections 6582 and 6586 of the General Statutes of 1915 (sections 62 and 66 of the negotiable instruments act) provide that the title of the person who negotiates an instrument is defective when the signature was procured by fraud or when he negotiates it in breach of faith, and that every holder is deemed *prima facie* to be a holder in due course, but when the title of the one who negotiates it is shown to have been defective the burden is upon the holder to prove that he or some one under whom he claims acquired the title in due course. But these do not settle the case, and an unconditional promise, in writing, to pay a certain sum at a fixed time cannot be defeated by parol evidence of an oral agreement that the obligation was to be paid out of the profits of the business. In *Stevens*

*v. Inch,* 98 Kan. 306, 158 Pac. 43, it was sought to avoid liability on a promissory note by showing orally that it was to be deemed a mere form, that it was to be paid out of the business under consideration, and that, if unable to pay, the makers would be called upon. In the opinion it was said:

"It does not help the defense to call the statements and promises of Stevens fraudulent. The books teem with cases involving oral promises that notes need not be paid, or are mere memoranda, or will be surrendered without satisfaction, or may be paid out of the profits of a business venture if successful, and need not be paid otherwise. In all such cases the promise is made to induce the maker to sign the note, and if the promise be not kept it works a fraud. The theory of the law is that more fraud would result if all notes were open to qualification and contradiction by parol evidence than if the door were closed and locked against such evidence. Consequently to defeat liability on a note because obtained by fraud the fraud must consist in something else than representations and promises of the kind referred to." (p. 308.)

In *Naftzger v. Buser,* 106 Kan. 115, 186 Pac. 997, the instrument recited that " 'the following note is given to cover balance of payment on 112,000 shares of stock' " in a certain company at a certain price and was to be paid as the stock should be resold, and then followed the promissory note in the usual form for $15,800, " 'payments to be made from time to time as the stock is resold, the stock being held in escrow pending sale by us.' " It was contended that the instrument was a mere memorandum to cover the terms of the oral agreement to grant a certain option and that the stock was delivered on the express understanding and agreement. But it was held that the instrument expressed an obligation to pay which was itself not conditional or contingent. The time of payment being uncertain, a reasonable time was implied, and it was said that—

"The cases in which written obligations were not permitted to be whittled down, or overthrown, or converted into something else, by parol evidence of contradictory agreements between the parties, are so numerous that citation is not necessary." (p. 116.)

In *Underwood v. Viles,* 106 Kan. 287, 187 Pac. 881, a note was taken for shares of stock in a company and on its face was an absolute unconditional promise to pay on demand, and an oral agreement was made to the effect that it was to be paid out of the profits, and not otherwise, and it was held that recovery could not be defeated by such parol evidence. It was said in the opinion that the instrument imported an absolute promise to pay on demand, while the oral understanding was that it was not to be paid unless it could

be paid out of the profits of the cold-storage business. · *Stevens v. Inch,* supra, was quoted with approval, and numerous other citations made. In *Bank v. Pirotte,* 107 Kan. 573, 193 Pac. 327, the answer alleged that the defendant was told that two signatures were required on the notes to make them bankable paper, that her signature was a formal matter to show to the bank examiner, and that she would not be held liable for the note. It was held that these allegations did not constitute a defense.

Under the rule declared in these authorities it seems clear that even if the payee were plaintiff, the defendant could not interpose the desired defense successfully and, hence, it cannot avail him as against the indorsee.

The judgment is affirmed.