## BUSHNELL v. ELKINS*
(No. 1238; April 20, 1926; 245 Pac. 304.)

CORPORATIONS—LIABILITY ON STOCK SUBSCRIPTION—TRIAL—EVIDENCE
—PAROL EVIDENCE RULE—FRAUD.

1. One subscribing for stock in co-operative company, organized under Comp. St. 1920, §§ 5119-5134, and giving note for amount of subscription, thereby became stockholder, and hence note was supported by consideration, though no certificate of stock was issued, especially where company incurred debts on strength of subscriptions.

2. Court can disregard parol evidence, admitted without objection, to vary terms of unconditional promissory note, on subsequent motion, by holder to direct verdict, since parol evidence rule is not rule of evidence, but of substantive law.

3. When parties put engagements in writing, complete on face and certain and definite as to objects, such writing is conclusively presumed to contain whole contract and extent and manner of undertaking, and cannot be contradicted, altered, or added to by parol or extrinsic evidence, though it may be shown to be void or voidable.

4. Evidence of oral agreement that 8 per cent of maker's purchases should be credited on note given in payment for stock in co-operative company *held* inadmissible to vary terms of unconditional promise to pay in note, though Comp. St. 1920, § 5131, does authorize such a co-operative company to apportion profits by declaring 8 per cent. dividend.

5. Representation that 8 per cent. of maker's purchases should be credited on note given in payment of stock in co-operative company, which induced execution of such note, *held* not to constitute legal fraud so as to avoid it, since promissory representations, relating to future, and depending on contingencies which may or may not happen, furnish no foundation for claim of fraud.

*See Headnotes (1) 14 C J p. 478 n. 44; p. 481 n. 87; p. 587 n. 78. (2, 3) 22 C J p. 1070 n. 34; p. 1074 n. 35, 39; p. 1075 n. 50; p. 1098 n. 96; p. 1102 n. 97; 38 Cyc p. 1586 n. 8. (4) 22 C J p. 1089 n. 31; p. 1091 n. 39; p. 1094 n. 57; p. 1095 n. 63; (5) 14 C J p. 609 n. 13; 22 C J p. 1213 n. 59; p. 1215 n. 65; p. 1224 n. 30.

APPEAL from District Court, Niobrara County; CYRUS O. BROWN, Judge.

Action by Charles T. Bushnell and another against Roy Elkins, on a promissory note given for a share of corporate stock. There was judgment for defendant and plaintiff appeals.

*Thomas M. Fagan*, for appellant.

The court erred in receiving parol testimony to vary the terms of a written instrument; Stickney v. Hughes, 12 Wyo. 397; an unconditional promise in writing to pay, cannot be defeated by parol evidence; Hargin v. Pinkerton, (Kan.) 204 Pac. 675; the court erred in refusing plaintiff permission to cross-examine with respect to alleged statements of guaranty; 12 R. C. L. 1053; the court erred in giving additional instructions after the cause had

been submitted and in overruling plaintiff's motion for a judgment notwithstanding the verdict; the alleged misrepresentations were nothing more than expressions of opinion in regard to future happenings; a false representation must relate to facts to constitute actionable fraud; 12 R. C. L. 244-252; Stevens v. Inch (Kan.) 158 Pac. 43; Bank v. Swan, 3 Wyo. 356; a finding of fraud, without evidence, should be set aside; Dodd v. McCrane (Ark.) 46 Am. Dec. 301; the cause should be reversed with directions to enter judgment for appellant.

*Harold I. Bacheller* and *E. Paul Bacheller*, for respondent..

No objections were made by appellant to the evidence of his own witnesses regarding false representations; 3 C. J. 816; 22 C. J. 195; Cronberg v. Johnson, 29 Wyo. 11; parol evidence is admissible to show the circumstances under which an instrument was executed; Stickney v. Hughes, 12 Wyo. 397; false representation concerning the ability of a proposed corporation to pay dividends may be the basis of fraud if recklessly made; 2 Flech. Cyc. Corps. 1339; the same rule applies to oral representations made in soliciting stock subscriptions; Brick Co. v. Collins, (Ark.) 135 A. S. R. 197; Brown v. Co., (Cal.) 136 Pac. 542; Hinkley v. Co., (Ia.) 119 A. S. R. 564; Savage v. Bartlett, (Md.) 28 Atl. 414; Ramsey v. Co., (Mo.) 22 S. W. 719; Campbell v. Co., (Utah) 148 Pac. 410; Mack v. Latta, 83 N. Y. 242; Motor Co. v. Thies, (Nev.) 65 Pac. 373; Phelps v. Grady, (Calif.) 141 Pac. 926; Bonding Co. v. Mount (Texas) 183 S. W. 783; Henry v. Building Ass'n., (Calif.) 105 Pac. 960; a promise of a salaried position as an inducement to purchase stock without intention of keeping it, is actionable fraud; Holmes v. Wilkes, (Minn.) 153 N. W. 308; U. C. J. 1093; and cases cited; Sweet v. Kimball, (Mass.) 55 A. S. R. 406 Vulcan Co. v. Mfg. Co., 248 Fed. 853; Goodwin v. Fall, (Me.) 66 Atl. 727; the rule applies to any promise made without intention of performance; Goodwin v. Horne, 60 N. H. 485; Bank v. Green, (Ia.) 115 N.

W. 893; Carney v. Co. (Nebr.) 110 N. W. 882; Casper Motor Co. v. Marquis, 223 Pac. 764; Jenkins v. State, 22 Wyo. 34; the cause was properly submitted to the jury on the instructions of the court.

BLUME, Justice.

This is an action brought by Charles T. Bushnell and Keeline Co-Operative Mercantile Company, a corporation, against Roy Elkins, on a promissory note for $200. The case was tried to a jury, which returned a verdict in favor of defendant, upon which judgment was entered and from which Charles T. Bushnell, hereinafter called the appellant, has appealed. The case has been tried twice. The first trial resulted in a disagreement of the jury and we have been asked by the attorneys for both parties to render a final judgment herein, either affirming the case or to direct a judgment in favor of the appellant.

About October 5, 1920, Roy Elkins, the respondent herein, and others, joined in signing the following statement:

"The undersigned, believing that a Co-operative store and shipping company on the ROCHDALE PLAN would be of great benefit to the people of Keeline, Wyo., and vicinity, do hereby subscribe for the number of Two Hundred Dollars ($200) shares, set opposite our respective names of the capital stock of such a company now being organized at Keeline, Wyo.

"We also hereby agree:—1st, to assist in incorporating the said company as soon as possible according to the law of Wyoming;

2nd, to settle for said share or shares by cash or note as soon as company is organized, and also to pay one membership fee of $10.00 which may be used for organizing expenses;

3rd, that the business and property of Chas. T. Bushnell shall be taken over according to the proposal hereto attached;

4th, that said proposal is hereby accepted by me."

The proposal attached, as above mentioned, is in the following words and figures:

"Merchants Proposal.

To the people of Keeline, and vicinity.

Believing that a co-operative buying and selling on the American Rochdale plan is the most just way of doing business, we hereby make the following proposition:

"As soon as 75 shares of capital stock of Two Hundred Dollars ($200) each have been subscribed for and a co-operative company known as the Co-Operative Company or some other appropriate name has been incorporated in accordance with the laws of this state, we agree to turn over to said company, our entire stock of general merchandise, fixtures, and unexpired Fire insurance policies, also the coal sheds and scales.

"An invoice of said stock shall be taken by two persons, one chosen by the President of the Co-Operative Company and one by me, and the prices allowed for said goods shall be on the basis of present wholesale cost, freight and cartage added.

"The fixtures and such goods as are old, or damaged shall be appraised by two persons so chosen, and in case they can not agree, they to choose a third party.

"We agree to give a clear bill of sale to the Co-Operative Company at the time the valuation is determined, of the stock and fixtures.

"I am to receive in cash and subscription notes such portion of the proceeds of the shares of stock sold and settled for as shall equal the agreed values of the stock and fixtures.

"If there remains any unpaid amount at the time of delivery of said bill of sale, I agree to take a promissory note executed by the directors of said company for the balance of the agreed value of the property thus transferred.

"The membership fees as collected by the company shall be used for organizing expenses and shall cover all costs for same to said company.

"That no member of this company shall hold more than One Thousand Dollars, $1000. in shares or have more than one vote.

"In Witness whereof I have set my hand this 5th day of October, 1920, at. Keeline, Wyo. Niobrara County, State of Wyoming.

Chas. T. Bushnell."

The number of shares mentioned in the merchants' proposal aforesaid were duly subscribed. The respondent, Roy Elkins, subscribed for one share. On or about December 8, 1920, a corporation under the name of Keeline Co-Operative Mercantile Company was duly organized, as mentioned in the foregoing papers, under the laws of this state relating to co-operative associations, being sections 5119 to 5134, W. C. S. 1920, both inclusive. Bylaws of the said corporation were duly adopted on December 8, 1920, by the subscribers of the capital stock of the said corporation, and the respondent Elkins gave his promissory note of $200 on that date, in accordance with his subscription. The promissory note is an unconditional agreement to pay, is dated December 8, 1920, and was made due on or before the 8th day of December, 1921. It is given to said corporation and is endorsed by it, and it was, at the commencement of the action, owned and held by appellant. An invoice of the merchandise held by the latter was duly taken, in accordance with his proposal aforesaid, on December 11, 1920, the property invoicing the sum of $16,-564.97, and it was duly transferred to said corporation, which thereupon engaged in the mercantile business and continued therein until about the time of the trial in this case, when apparently it became insolvent. Neither the appellant nor his agent ever acted as directors of the corporation, organized as aforesaid.

1. It is claimed by the respondent that there was no consideration for the note sued on, for the reason that no stock in said corporation was ever delivered to him. Appellant, however, secured the right to his stock by virtue

of his subscription contract and the note which he executed pursuant thereto, and he thereby became a stockholder in the corporation, even though no certificate was issued to him. The issuance of the certificate was immaterial, except as evidence of his ownership of a share in the company. Mechanics' Savings Bank v. Gish, (Iowa) 203 N. W. 687, 692, and cases there cited. Further, appellant delivered to the corporation, organized as aforesaid, merchandise to the value of $16,564.97, and the corporation incurred an indebtedness and a liability to that amount, upon the strength of the subscription to the capital stock of said corporation and the execution of a note by respondent and his associates, and respondent is, accordingly, hardly in position, at this time, to claim that there was no consideration for the note.

2. The respondent pleaded and introduced testimony to the effect that in order to induce him to subscribe to the capital stock of said corporation, and to execute the promissory note aforesaid, appellant and his agent represented that it would be advantageous for respondent to buy his merchandise from the corporation aforesaid; that 8 per cent of such purchases would be credited upon said promissory note; that the note would be renewed from time to time until such credits of 8 per cent would pay the principal and the interest thereof; and that respondent would never, accordingly, be compelled to pay any part thereof, except in the manner aforesaid. He further pleaded and testified that he relied upon such representations when he executed his subscription and his note. No point is made of the fact that the note was not renewed, because respondent failed to apply for, or refused to execute, a renewal. Counsel for appellant claimed and now claims that these promises, if actually made, could not annul or vary the terms of the unconditional promise to pay the note at the time therein stated, and that the admission of the foregoing testimony was in violation of the parol evidence rule. Counsel for respondent contest the

applicability of that rule in this case, and further say that no proper objection to the admission of this testimony was made. It appears that counsel for appellant objected to this testimony, upon the trial of the case, at two different times, and we think the attention of the court was sufficiently called to the claim now made by the appellant. Even if that were not true, however, and though the testimony had been admitted without objection, that would not affect the right or the duty of the court, subsequently, upon motion to direct a verdict, which was made in this case, to disregard such testimony, if in fact in violation of the rule aforesaid. Pitcairn v. Phillip Hiss Co., 125 Fed. 110, and cases there cited. This must be so, because, as heretofore stated by this court in the case of Natrona Power Co. v. Clark, 31 Wyo. 284, 297; 225 Pac. 586, the rule mentioned is not in fact a rule of evidence but a rule of substantive law. Thayer's Preliminary Treatise on Evidence, p. 397, 5 Wigmore on Evidence, (2nd ed.) sec. 2400; Chamberlayne's Modern Law of Evidence, sec. 3548; 22 C. J. 1075. When parties have deliberately put their engagements in writing, and such writing is complete on its face and is certain and definite as to the objects of their engagement, it is conclusively presumed that the whole contract of the parties and the extent and manner of their undertaking was reduced to writing, and cannot be contradicted, altered, added to or varied by parol or extrinsic evidence. It has long been recognized by the courts, that a different rule would soon render instruments in writing of no value and the temptations to commit perjury would be increased. 1 Greenleaf on Evidence, sec. 275; 22 C. J. 1070, 1074. Such parol testimony is not excluded because of no probative value, but because it is against the policy of the law that written contracts should be overturned in that manner. It is rejected, as stated in Thayer in the work aforesaid, page 401, because, if admitted, it could be of no use.

3.    We turn then to inquire whether the testimony mentioned above was in violation of the foregoing rule.    The note sued on in the case at bar, as heretofore stated, is an unconditional promise to pay.    There is nothing in the preliminary, written agreements heretofore mentioned which modify that promise, and we think it clear that such testimony did not show a collateral contract, is not consistent with the terms of the note, but absolutely contradicts and varies it.    In the case of Hangen v. Pinkston, 110 Kans. 463, 204 Pac. 675, the defendants, in answer to a suit on a promissory note made by them, alleged that it was in renewal of a note which had provided that it should not be paid in cash, but that the profits and dividends accruing upon a certificate of stock held by defendant in plaintiff corporation, should be credited upon the note from time to time until it was paid and satisfied. The court said:

"The entire story about the original notes, showing on their face that they were to be paid by dividends,   *   *   * amounts to nothing by way of defense.   *   *   *   An unconditional promise in writing, to pay a certain sum at a fixed time, cannot be defeated by parol evidence of an oral agreement that the obligation was to be paid out of the profits of the business."

In the case of Underwood v. Viles, 106 Kans. 287, 187 Pac. 881, a syllabus in the case is as follows:

"In the organization of a corporation the plaintiff executed to the defendant a promissory note, as payment for shares of capital stock of the company.    On its face the note was an absolute and unconditional promise to pay on demand.    It was claimed by plaintiff that there was an oral agreement to the effect that the note was to be paid out of the profits of the corporate business, and not otherwise.    Held, that a recovery on the note cannot be defeated by parol evidence of oral agreement or understanding,

which was in direct contradiction of the terms of the instrument.''

Cases to a like or similar effect are Van Fossan v. Gibbs, 91 Kans. 866, 139 Pac. 174; Bank v. Paper Co., 98 Kans. 350, 158 Pac. 44; Commonwealth Trust Co. v. Coveney, 200 Mass. 379, 86 N. E. 895; Appleby v. Barrett, 28 Pa. Sup. Ct. 349; Mechanics' Savings Bank v. Gish, (Iowa) 203 N. W. 687; Davenport v. Mullens, (Iowa) 205 N. W. 499; Mantz v. Fisher, (N. D.) 200 N. W. 795; Timmons v. Bourges Service, 205 App. Div. 600, 200 N. Y. Sup, 133; Faris v. Beck, 74 Colo. 480, 222 Pac. 652; Weiss v. Brown, 194 N. Y. Sup. 441; 22 C. J. 1089, 1091, 1094, 1095. Counsel for respondent seem to think that the case at bar may be distinguished from these cases, because there was a promise in the case at bar that respondent should have a discount of 8 per cent on his purchase at all events. That seems hardly the effect of the evidence. Respondent testified that the note in suit should be paid by a discount of 8 per cent which he would receive on his purchases. He mentions the discount only in connection with the payment of the note. He testified that Payne, Bushnell's agent, represented that—

''if I would buy $200, worth of stock in the store that I would never be out any money in paying for this stock; * * * that every dollar's worth of stuff that I bought out of the store, eight per cent of that would be applied on this note until the note was paid for and that I would have paid up stock in the store that didn't cost me anything.''

It is reasonably clear from the record, we think, that the idea of a discount of eight per cent arose out of the conversations relating to the laws of Wyoming in reference to cooperative associations, and out of the fact that section 5131, W. C. S. 1920, provides, among other things, that a corporation organized under the cooperative plan,

as was the corporation in question here, is authorized to apportion its profits by declaring "dividends at the rate of eight per cent per annum." In other words, the so-called discount was really to come from the profits of the corporation. But whether that is true or not, is not important, for the terms of the note would be contradicted and varied just as effectually by parol testimony that it was to be paid by a discount, as interpreted by counsel for respondent, as by profits from the business.

4. The parol evidence rule, heretofore mentioned, does not, of course, prevent the respondent from showing that the contract entered into was in fact not a contract, or that it was void or voidable for some other reason recognized by law, as for instance for fraud or mistake. 22 C. J. 1213, 1215. In the case at bar it is claimed that the contract was void, because of the fraud of Bushnell. This is the crux of the case. It is pleaded in the answer filed herein by respondent, that the representations heretofore mentioned, made by Bushnell and his agent, were "false, fraudulent and deceitful, and were known to be false, fraudulent and deceitful by said Charles T. Bushnell when they were so made." We do not, however, think that the representations relied upon herein are of such character as to constitute legal fraud. The authorities upon that point are, we think, clear and decisive. A man cannot defeat the parol evidence rule by simply claiming that the promises made were fraudulent, if they were not so in fact, or not such as the law recognizes as fraudulent. In First National Bank v. Swan, 3 Wyo. 356, this court used the following language:

"A representation which is promissory in its nature, which relates to the future or which depends upon contingencies which may or may not happen, furnish no foundation for a claim of fraud or deceit."

In the case of Kulenkamp v. Groff, 71 Mich. 675, 1 L. R. A. 594, 15 Am. St. Rep. 283, 40 N. W. 37, it was held that

to obtain the signature on a note under a promise by the payee that the maker should not be liable thereon, and the failure to keep such promise, is not such a fraud as will nullify the note. The court, among other things, said:

"As far as the claim of fraud is concerned, it is not tenable. The signature of Groff was not procured by false pretenses, by the statement of any fact as existing which did not exist, but upon false promises which have not been performed. It is no more nor less than the nonperformance of an oral agreement made at the time the note was signed, and which oral agreement was totally at variance with the terms of the written contract as set forth in the note. This cannot be considered such a fraud as would nullify the note.

"If proof of this unperformed agreement not to hold Groff upon this note, in plain contradiction to its terms, can be admitted to destroy his liability upon it, then any unperformed oral agreement made at the time a written contract or note is executed may be admitted, under the claim of fraud, to defeat the terms and purpose of the written agreement. The maker of a note, as well as the surety or indorser, may say—

"It is true, I signed the note, but it was agreed I was not to pay it, and the collection of it is a fraud upon me."

"Written instruments, under the admission and use of such proof to defeat them, would be of but little value, and altogether uncertain, and of no more strength than oral agreements."

In the case of Stevens v. Inch, 98 Kans. 306, 158 Pac. 43, the court said:

"It does not help the defense to call the statements and promises of Stevens fraudulent. The books teem with cases involving oral promises that notes need not be paid, or are mere memoranda, or will be surrendered without sat-

isfaction, or may be paid out of the profits of a business venture, if successful, and need not be paid otherwise. In all such cases the promise is made to induce the maker to sign the note, and if the promise be not kept, it works a fraud. The theory of the law is that more fraud would result if all notes were open to qualifications and contradiction by parol evidence than if the door were closed and locked against such evidence. Consequently, to defeat liability on a note because obtained by fraud, the fraud must consist in something else than representations and promises of the kind referred to.''

In the case of Fuller v. Law, 207 Pa. 101, 58 Atl. 333, the court said:

''The proposed evidence amounts to nothing more than an offer to prove an independent parol contract that the note was to be paid in another method than that expressed on its face. It is straining both legal and moral definitions to call the mere failure to perform an oral promise, to accept payment in a particular form, a fraud; dishonest it may be, but it is no more a legal fraud than the immediate collection of a past due debt on which the creditor has orally promised the debtor indulgence. As there was no fraud in the creation of the instrument, nor in not waiting until the dividends of the stock paid it, it comes under the ruling in Hill v. Gaw, 4 Pa. 493 * * *.''

To the same effect are Peoples Bank v. Baker, (Mo. App.) 193 S. W. 632; First National Bank v. Henry, (Mo. App.) 202 S. W. 281; First State Bank v. Kelly, 30 N. D. 84, 152 N. W. 125, Ann. Cas. 1917D 1044; Johnson v. Benham, (Minn.) 203 N. W. 444; Klemm v. Weil, (Iowa) 190 N. W. 388. A number of cases have been cited by counsel for respondent which are said to sustain their contention. We have examined them but do not find them in point. In several of them the statements claimed as misrepresenta-

tions were construed to be equivalent to statements of present facts. In others, the promisor, with intent to defraud, made statements which he was not in position to carry out, or which he knew positively could not be and would not be carried out. Without attempting to analyze them in detail, the facts in all of them are totally dissimilar to the facts in the case at bar. In truth, we have not been cited to a case, and we have found none, in which misrepresentations, of the character claimed to have been made in the case at bar, have been held to defeat an action on a note. A number of cases on this subject are collected in note 10 L. R. A. N. S. 640-653. As already indicated, neither Bushnell nor his agent were able, as respondent well knew or should have known, to give the discount out of which, as is claimed, the note was to be paid. The success of the business, in which respondent and his associates engaged, was dependent upon contingencies which no man was able to foresee. The statements of Payne and of Bushnell were merely opinions, or expressions of hope, or expectation that the business of the corporation would be successful. And as far as that is concerned, it is not at all unlikely that, had the financial depression not overtaken the country, and had the business been in the hands of competent men and had the members of the corporation heartily cooperated, these hopes and expectations might have been fulfilled. But even respondent himself aided in the final insolvency of the corporation, for he failed to pay his indebtedness to it when it was in need, and withdrew his patronage at an unfortunate time. We think, in short, that the representations that were made, were not such as to constitute legal fraud.

The judgment of the district court rendered herein is accordingly reversed, and, in accordance with the provisions of section 5897, W. C. S. 1920, the trial court is directed to enter judgment, as of date September 19, 1923, in favor of appellant for the amount claimed in the peti-

tion, in accordance with the stipulation of parties entered into that such should be the judgment in favor of appellant, if any.

*Reversed.*

POTTER, C. J. and KIMBALL, J., concur.