No. 26,235.

THE MACKSVILLE STATE BANK, *Appellee,* v. ELIZABETH EHRLICH
et al., *Appellants.*

SYLLABUS BY THE COURT.

1. BILLS AND NOTES—*Action by Transferee—Sufficiency of Petition—Jurisdiction of Parties.* In an action by the transferee of a promissory note wherein the maker is joined with the payee and transferrer as defendants, the petition and exhibited note examined, and held to state a cause of action against the payee and transferrer so as to make him a proper party to the litigation, and so that service of summons upon him gave the court jurisdiction of the action and justified the summoning of the maker as codefendant notwithstanding she was a resident of another county.

2. SAME—*Actions by Transferee—Defenses—Effect of Negotiability.* In an action on a promissory note brought by the transferee or assignee of the payee, where the maker was permitted to plead and prove whatever defenses would have been available against the original payee, it was immaterial whether the note was negotiable or not.

3. SAME—*Trial—Instructions.* Record examined, and errors assigned on instructions given and refused not sustained.

4. SAME—*Evidence—Admissibility.* Error assigned on the admission of certain testimony examined and not sustained.

5. EVIDENCE—*Parol Testimony Affecting Writings—Admissibility.* Rule followed that in an action to recover on a written instrument according to its terms, when that instrument is fair on its face and unimpeached for fraud or mutual mistake, a defense based upon an alleged contemporaneous oral agreement which would vary or defeat the terms of the written instrument cannot be maintained.

Appeal from Stafford district court; LeRoy E. Quinlon, judge. Opinion filed December 5, 1925. Affirmed.

*Jay T. Botts,* of Coldwater, for the appellants.

*Paul R. Nagle,* of St. John, for the appellee.

The opinion of the court was delivered by

DAWSON, J.: This was an action to recover on a promissory note which the plaintiff alleged it had acquired in due course. The note with its indorsements reads:

1. Bills and Notes, 8 C. J. § 1080. 2. Id., 8 C. J. 1414. 3. Id., 8 C. J. 1394. 4. Id., 8 C. J. 1414. 5. Evidence, 22 C. J. § 1663; 20 A. L. R. 421; 3 R. C. L. 862.

Macksville State Bank v. Ehrlich.

"$750.00.                              MACKSVILLE, KANSAS, Oct. 15th, 1921.

"On or before Oct. 15th, 1923, after date I, we, or either of us, promise to pay to the order of J. B. English
                        Seven Hundred Fifty Dollars,
at the Macksville State Bank, Macksville, Kansas, for value received, with interest at 7 per cent per annum after date until paid. It is understood that the time of payment of this note may be extended any number of times by the payee or holder without notice or the express consent of payors, sureties, indorsers, guarantors or either of them, not exceeding in all ——— months after maturity. The drawers and indorsers, sureties, and guarantors, severally waive presentment for payment and notice of nonpayment of this note, and they each severally waive protest and notice of protest and nonpayment of this note. Appraisement waived.

"Copy of chattel mortgage securing this note, dated ———, 191—, recorded on page ——.                      ELIZABETH EHRLICH.

"No. 31295.

"P. O. Coldwater.

"Indorsements: 16c internal revenue stamps. Demand, notice and protest waived.                                      J. B. ENGLISH."

The defendant maker, a resident of Comanche county, admitted the execution of the note and its indorsement, but alleged that the consideration had failed, and that the payee was still the owner of it, and that its transfer to the plaintiff bank in Stafford county was a sham to compel defendant to defend the action away from her home county, and that her codefendant, J. B. English, payee of the note, was a resident of Gray county, and that he had permitted service of summons to be made on him in Stafford county as part of his scheme and that of the bank to subject her to litigation over the note in Stafford county. It was also alleged that the president and active manager of the bank, A. G. English, was a brother of the payee, J. B. English. The defendant also pleaded at length what she conceived would have been a good defense against the note if J. B. English were still its owner, or if the plaintiff bank had acquired it after maturity or with notice of defenses to it. This defense, in substance, was that in 1921 and for some years prior thereto the defendant and J. B. English and H. R. Ross had owned a ranch of 1,800 acres in Comanche county, and that their business as landlords in common had been conducted by defendant under the name of Thomas & Co. About 1,400 acres of the ranch was wheat land, and defendant (or Thomas & Co.) had become heavily involved to local banks for moneys borrowed to aid the tenants of the ranch.

English and Ross claimed that defendant had no authority to incur debts to bind them, but these three parties effected a settlement of that controversy, in which settlement it was agreed that English and Ross would loan defendant $4,500, being $2,250 each, repayable in sums of $750 and evidenced by six promissory notes, two payable in one year, two in two years and two in three years. These notes were executed by defendant accordingly, three of them being delivered to Ross and three to English. Defendant paid the first two of these notes as they fell due; and also paid the interest on those due Ross the second and third years. The second note in favor of English is the one sued on in this action.

Defendant further alleged that at and prior to the time of the settlement, and as a part of it and as a part consideration therefor, it was agreed by English, Ross and defendant that she would be permitted to manage the ranch and collect the rents until she had realized enough money therefrom to pay all these notes, totaling $4,500 and interest, but that English and Ross had interfered with her management and had leased part of the ranch to a tenant not of her choosing, and that the tenants selected by her were not permitted to farm all the land, and as a consequence they became and were adjudicated bankrupts, thereby depriving the defendant of any opportunity to realize money from the anticipated source to pay the note in suit. Defendant concluded with allegations that the note was negotiated in breach of faith and under circumstances amounting to fraud, that plaintiff did not take the note in good faith and for value, and that plaintiff had actual notice of the circumstances under which it was executed.

Plaintiff's reply denied all defendant's allegations necessary to be traversed to maintain its cause of action, and alleged that after October 15, 1921, when the notes were executed and delivered to Ross and English, and prior to the time when the first series of notes fell due and before they were paid, the defendant and Ross and English agreed to a division of the ranch, and it was so divided by an exchange of deeds; and that after such division and exchange of deeds, the defendant had no right of ownership or control over any of the land except the part assigned to and conveyed to her; and that thereafter defendant had paid the first note for $750 due English and the first note for $750 due Ross, and had paid Ross the interest due on the second and third notes held by him, and that

the notes were all given at one time in one and the same transaction, and that defendant was estopped to deny liability on the note in suit.

On this joinder of issues, the cause was heard at length before a jury. A verdict in favor of plaintiff was returned, and certain special questions were answered:

"Special questions submitted by defendant:

"Q. Do you find that the note in suit is in truth and in fact owned by J. B. English, and that the transfer to plaintiff is a sham and made for the purpose of forcing Elizabeth Ehrlich to leave her home county to defend said action? A. No.

"Special questions submitted by plaintiff:

"Q. 1. Did the plaintiff bank become the holder of the note in suit before it became due? A. Yes. . . .

"Q. 3. Did the plaintiff take the note in suit in good faith and for value? A. Yes. . . .

"Q. 5. Did the plaintiff at the time the note in suit was negotiated to it have notice of any infirmity in the note or defect in the title of the person negotiating it? A. No. . . .

"Q. 7. Do you find that the defendant, J. B. English and H. R. Ross, offered to loan the defendant, Elizabeth Ehrlich, $2,250 each? A. Yes. . . .

"Q. 9. If you answer question number seven in the affirmative, then state how long after the offer on the part of J. B. English and H. R. Ross to loan the defendant, Elizabeth Ehrlich, $2,250 each was it before she accepted the offer? A. About two weeks. . . .

"Q. 11. What consideration did the plaintiff bank pay to J. B. English for the note in suit? A. $750.

"Q. 12. Did the defendant, Elizabeth Ehrlich, pay to H. R. Ross the first $750 note that she executed to him and the interest up to October 15, 1922, on the other two notes she executed to H. R. Ross? A. Yes."

Judgment was entered for plaintiff, and defendant assigns certain errors which will be noted in the order presented.

It is first urged that the action was not rightly brought in Stafford county, for the reason that it did not state any cause of action against the payee and indorser, J. B. English, a resident of Gray county, who permitted summons to be served on him in Stafford county. The fact that the president of the plaintiff bank was a brother of J. B. English not unnaturally gave rise to defendant Ehrlich's suspicion that the action was collusively brought in Stafford county, but mere suspicion could not serve in lieu of evidence, of facts; and of course the action could be brought where either of the proper parties defendant could be summoned (R. S. 60-509), and if English was properly served with summons in Stafford county, the action was not improperly commenced in that jurisdiction, and

summons was also properly served on defendant Ehrlich, notwithstanding she resided in Comanche county. (R. S. 60-2502.) An examination of plaintiff's petition shows that all the requisite allegations of a cause of action against Ehrlich were pleaded. Plaintiff complained of defendants, Ehrlich and English, alleging the execution of the note by Ehrlich to English and its sale and indorsement by English to plaintiff before maturity and its acquisition in due course, and that it was due and unpaid, and the note and indorsements were exhibited as part of plaintiff's petition, concluding with an allegation that there was due from said defendants and each of them $859.75. The prayer read: "Wherefore plaintiff prays judgment against said defendants, Elizabeth Ehrlich and J. B. English and each of them in the said sum of $859.75," etc. It will thus be seen that English was no mere nominal defendant, but a proper party to the litigation, one who had a real and substantial interest in the subject of the action, adverse to the plaintiff, and against whom substantial relief might be obtained. (*Wells v. Patton*, 50 Kan. 732, 33 Pac. 15; *Marshall v. Land Co.*, 75 Kan. 445, 89 Pac. 905; *Hawkins v. Brown*, 78 Kan. 284, 97 Pac. 479. See, also, *Linney v. Thompson*, 44 Kan. 765, 25 Pac. 208; *Makemson v. Edwards*, 101 Kan. 269, 166 Pac. 508; *Maynard v. Bank*, 105 Kan. 259, 182 Pac. 542.) On this point the trial court committed no error.

It is next contended that the note was not negotiable, for the suggested reason that it was wanting in a definite date of maturity. By its terms the note was due on October 15, 1923 (*Reserve State Bank v. Bank Commissioner*, 117 Kan. 186, 230 Pac. 1056), but appellant argues that the definiteness of the specified due date is destroyed by the concluding recital in the note, that the time of payment may be extended without notice "not exceeding in all —— months after maturity." It is not possible to reconcile all the decided cases on this general subject. (*Cedar Rapids Nat'l Bank v. Weber*, 180 Ia. 966, L. R. A. 1918A, 432; *First Nat'l Bank of Albuquerque v. Stover*, 21 N. M. 453, L. R. A. 1916D 1280; 8 C. J. 140; 3 R. C. L. 910; 1 R. C. L. Supp. 917; 24 Mich. L. Review 64.) It has been held that where a blank space in a clause of a contract is not filled in, such clause is nugatory and meaningless. (*Smith v. Griffith*, 105 Kan. 357, 358, 361, 184 Pac. 538.) However, the matter is not important in this case, since the trial court permitted issues to be formed and all the pertinent facts to be developed just as if the note were not negotiable and as if the plaintiff bank had been bound to meet what-

ever defenses could have been urged against J. B. English, the original payee. But it is contended that if the nonnegotiable character of the note is determined or conceded, then J. B. English's indorsement was no more than a mere assignment of his interest in it, and that he was not liable by mere implication of law. That point, too, may be conceded. (*Iron Works v. Paddock,* 37 Kan. 510, 512, 15 Pac. 574.) But certainly the plaintiff could plead and prove sufficient facts to fix a liability on English, whether such liability impliedly attached to him as indorser under the negotiable-instruments act or not; and we think the plaintiff's allegations of English's liability were sufficient for that purpose, and the point that he was not liable as a matter of law cannot be sustained.

Error is assigned on certain of the trial court's instructions given and refused. These have been examined, but it is unnecessary to reproduce them, and the assignment of error based thereon cannot be sustained.

It is next urged that "the court erred in not submitting the matter of fraud in negotiation in its instructions." While defendant's answer contained some allegations which rather hazily hinted at some unfair dealing on the part of English, it is difficult to perceive any specific allegation of fraud on his part, and it does not appear that any fraud was proved by competent evidence; and although defendant did request several instructions presenting her theory of the pertinent law of the case, no instruction specially covering any issue of fraud was requested. Moreover the instructions given fully covered all the pertinent phases of the law touching the defendant's nonliability if the consideration for the note failed.

Error is also based upon the admission of the testimony of the bank president touching what other officers of the bank knew of the transaction whereby the bank acquired the note. It is urged that such testimony was incompetent and inconclusive. But since we have not been able, so far, to discover any defect in the note, nor any defense to it even in the hands of the original payee, we cannot sustain this assignment of error.

In defendant's next assignment of error she contends that she was not estopped by the division of the ranch and the exchange of deeds from asserting her defense to the note in question. We think the defense never reached a point where the question of estoppel required to be determined. The defense that Mrs. Ehrlich had an oral agreement contemporaneous with Ross and English that she was to

be permitted to manage the ranch until she collected enough money to pay this note, as well as the other notes executed by her in the same transaction, was in effect a variance of the specified and unqualified terms of a written instrument by parol evidence. This law will not allow. Whatever may have been the claims, views and conflicting contentions of the parties, Ehrlich, Ross and English, prior to their settlement in 1921, these differences, views, claims and contentions were composed and settled, pursuant to which two loans of $2,250, totaling $4,500, were made by Ross and English to defendant, and she agreed in writing, without any "ifs" or "buts," to repay these loans in dual sums of $750 annually to each of the other parties, according to that composition and settlement. To have had any effect whatever upon defendant's obligation to pay this note, her alleged claim of right to rent the 1,800-acre ranch and to collect the rents thereon for whatever term of years might be necessary to produce sufficient revenues to pay these notes should have been reduced to writing and signed by the payees of the notes— by J. B. English—so far as concerned this note. Being oral, if any such agreement did exist, it was unavailing as a defense to this note. In *Trust Co. v. Danforth,* 103 Kan. 860, 177 Pac. 357, it was said:

"A contemporaneous oral agreement contradictory of the plain terms of the instrument could not be shown, because the result would be to render unsafe all reliance on such instruments. (*Getto v. Binkert,* 55 Kan. 617, 40 Pac. 925; *Van Fossan v. Gibbs,* 91 Kan. 866, 139 Pac. 174; *Bank v. Bowden,* 98 Kan. 140, 157 Pac. 429; *Bank v. Watson,* 99 Kan. 686, 163 Pac. 637; *Investment Co. v. Gamble,* 102 Kan. 791, 171 Pac. 1152; *Lonnon v. Batchman,* 103 Kan. 266, 173 Pac. 415.)" (p. 861.)

In *Naftzger v. Buser,* 106 Kan. 115, 186 Pac. 997, it was said:

"The instrument expresses an obligation to pay which is not itself conditional or contingent. . . . The instrument is definite and complete, and discloses an absolute liability which could not be defeated by parol evidence of conditional liability. The cases in which written obligations were not permitted to be whittled down, or overthrown, or converted into something else, by parol evidence of contradictory agreements between the parties, are so numerous that citation is not necessary."

This rule is applicable not only to promissory notes, but to all written contracts, whether negotiable, assignable or otherwise. In the absence of some substantial showing of fraud or mutual mistake, they simply cannot be varied, qualified or defeated by parol proof of another contemporaneous or precursory understanding not in writing, such as was relied on as a defense in this action. (*Bank*

*v. Manning,* 60 Kan. 729, 57 Pac. 949; *Thisler v. Mackey,* 65 Kan. 464, 70 Pac. 334; *Stevens v. Inch,* 98 Kan. 306, 158 Pac. 43; *Naftzger v. Buser,* 106 Kan. 115, 186 Pac. 997; *Underwood v. Viles,* 106 Kan. 287, 187 Pac. 881; *Bank v. Pirotte,* 107 Kan. 573, 193 Pac. 327; *Hangen v. Pinkston,* 110 Kan. 463, 204 Pac. 675; *Guaranty Co. v. Grabske,* 111 Kan. 271, 207 Pac. 322.)   See, also, Anno.—Parol Evidence—Bill or Note, 20 A. L. R. 421-502.

Nothing suggestive of prejudicial error in this record is discernible, and the judgment is therefore affirmed.