No. 36,120

THE TRADERS STATE BANK OF GLEN ELDER, *Appellee,* v. O. O. WOOSTER, *Appellee* (THE A. B. REED HIDE AND WOOL COMPANY, A. B. REED and ELMER ARNHART, *Appellants*).

(154 P. 2d 1017)

Opinion filed January 6, 1945.

*F. C. Norton,* of Salina, and *A. E. Jordan,* of Beloit, were on the briefs for the appellants.

*R. L. Hamilton,* of Beloit, argued the cause for appellee O. O. Wooster; *Ralph H. Noah,* of Beloit, argued the cause for appellee Traders State Bank.

The opinion of the court was delivered by

DAWSON, C. J.: This is an appeal from the decision of the district court of Mitchell county in a tripartite action which subjected the defendants A. B. Reed Hide and Wool Company and A. B. Reed to a judgment for $801.60 in favor of the plaintiff bank and to a judgment for $200.84 in favor of their codefendant, O. O. Wooster.

The controlling facts were these: The A. B. Reed Hide and Wool Company has a business establishment in Salina, in Saline county, where it is engaged in the purchase and sale of wool and hides. A. B. Reed is its owner. Elmer Arnhart is its manager. The defendant O. O. Wooster is a resident of Mitchell county who has been a buyer of wool for many years, and in the year 1941 bought wool from the farmers of Mitchell county as a commission agent for the A. B. Reed Hide and Wool Company. Early in 1942, A. B. Reed made an oral agreement with Wooster for the latter to buy wool on a commission basis for the Reed company. Wooster's compensation was to be two percent on wool of a specified quality. The Reed company furnished Wooster with blank drafts and other stationery supplies needful in his employment. Ordinarily Wooster drew a draft on the A. B. Reed Hide and Wool Company, through a Salina bank, payable to the farmer whose wool was purchased. On the back of the draft was a memorandum of the purchased wool for which the draft was drawn. However, in one or more instances previous to the one which precipitated this lawsuit, Wooster gave his own checks in payment for each purchase of wool, and to meet those checks he drew a draft on the Reed company, in favor of the plaintiff bank, and such a draft had been honored by the Reed company without question.

In the spring of 1942 Wooster bought various amounts of wool from Mitchell county farmers, aggregating 2,004 pounds, paid for

those several amounts by his own personal check on the plaintiff bank, drew a draft for the aggregate purchase price, $801.60, in favor of the plaintiff bank on the Reed company, with the data concerning the purpose of the draft on its reverse side, viz:

"11  Bag Wool         2004         40         801.60
"Payable only for merchandise as listed above."

Wooster shipped this wool to the Reed company which received and appropriated it, but declined to honor the draft, and declined to pay for the wool.

Hence this lawsuit in the district court of Mitchell county by the bank against Wooster, the A. B. Reed Hide and Wool Company, A. B. Reed and Elmer Arnhart. Its petition alleged that Wooster was the authorized agent of the Reed company, that on its account he had bought 2,004 pounds of wool and paid for it by checks on his personal account with the plaintiff bank; that on Wooster's own behalf and on behalf of the other defendants Wooster had drawn a voucher draft in the sum of $801.60 in favor of the plaintiff bank to meet the personal checks he had issued to the various persons from whom he had bought the wool—which method of financing such purchases had been acquiesced in by the Reed company; that it had received the 2,004 pounds of wool for which the draft was drawn, that it had mixed this wool with other wool and had sold and dis-posed of it, but had neither honored the draft nor paid for the wool. Plaintiff prayed judgment against all the defendants for the sum it had advanced to Wooster to pay for the wool.

On May 16, 1942, summons was served by the sheriff of Saline county on A. B. Reed Hide and Wool Company and Elmer Arnhart, its manager, and on Elmer Arnhart personally.

On May 21, 1942, Wooster entered his voluntary appearance, re-serving time to plead and file a cross action.

On June 10, 1942, attorneys for all defendants except Wooster filed a motion to make plaintiff's petition more definite and certain. This motion was overruled on September 12, following which a demurrer to plaintiff's petition lodged by the same defendants was overruled.

On June 19, 1942, defendants other than Wooster filed some plead-ing in the action not shown in their abstract.

On October 13, 1942, defendants filed another motion to make plaintiff's petition more definite and certain. Ruling thereon is not shown in abstract.

On October 30, 1942, defendant Wooster filed his separate answer to plaintiff's petition and therewith filed a cross petition against his codefendants. In his answer he admitted the material facts, pleaded his employment by the A. B. Reed Hide and Wool Company, the purchase of the 2,004 pounds of wool, its payment with his own checks, the drawing of the draft and its dishonor by the wool company, that company's appropriation of the wool, its refusal to pay therefor, and—

"This defendant is not obligated in any way to plaintiff, as plaintiff knew said wool was purchased and delivered to the other defendants, and that this defendant was simply agent of the other defendants, working on a commission."

In his cross petition Wooster pleaded his employment by his codefendants to purchase wool on their behalf on an oral agreement that they would pay him two cents per pound for all wool so purchased for them and that they supplied him with sight drafts to pay for such purchases. He set out in detail a large number of such purchases, giving names of wool growers, the weights and prices paid, the deliveries thereof to his codefendants, the commissions due him therefor, and praying judgment therefor.

On November 21, 1942, the attorneys who on behalf of defendants other than Wooster had theretofore filed a motion to make plaintiff's petition more definite and certain, on the same behalf had filed a general demurrer to that petition, "appeared specially" and moved the court to dismiss Wooster's cross petition, alleging that they were not residents of Mitchell county and none of them were served with summons in that county, but were served by the sheriff of Saline county. Their motion alleged that defendant Wooster was joined as a defendant for the purpose of "venuing said case" in Mitchell county; that by collusion of the plaintiff bank and Wooster the movants were required to plead in the action on June 19, 1942, at which time they did not know of "the above alleged bad faith and collusion"; that had the movants then known of such bad faith and collusion, defendants would only have appeared specially and would not have pleaded in the action. The motion to dismiss also directed the court's attention to the fact that Wooster had failed to plead in the action until long after his pleading was due and that his long-delayed pleading was filed without notice or consent of the movants, and without showing any reason for such delay, and—

"Said purported cross petition injects a wholly new issue into said action and without the pendency of said original action said O. O. Wooster would have had to file a separate action against these defendants in Saline county

where they reside and said O. O. Wooster should not now be permitted to take advantage of his connivance with the plaintiff and of his own lack of diligence and of his own omission."

On March 4, 1943, the foregoing motion on "special appearance" of counsel for the movants was overruled; and on April 29, 1943, they filed an answer to the plaintiff's petition alleging that the court had no rightful jurisdiction over said defendants, that the action was not brought in good faith but through collusion of plaintiff and Wooster, that plaintiff's petition did not state facts sufficient to constitute a cause of action against them, nor either of them. They also denied generally all the allegations of plaintiff's petition and specifically denied that Wooster was their duly authorized agent and employee. Their answer further alleged that they "had refused to accept the wool; that the wool had not been sold nor mixed; that they had a legal right to refuse to honor the draft and that they were not indebted to the plaintiff or Wooster in any sum." This answer was verified.

The same defendants filed a lengthy answer to Wooster's cross petition, in which they again raised the jurisdictional issue, traversed in detail the allegations of Wooster's cross petition, and alleged that all wool bought by Wooster was purchased by him on his own account, that Wooster was an independent dealer and not an agent of defendants on a commission basis. They admitted that they received the wool Wooster had shipped to them, but that they refused to accept it and had refused to pay the draft in question, that the wool had not been sold or mixed, that they had purchased the wool from Wooster personally, that they were not indebted to him when the draft was presented for payment. This answer was verified.

On November 17, the cause was set for trial, at which time the defendants other than Wooster filed a motion for judgment on the pleadings. This motion was overruled.

It has taken much space and not a little study of the record to arrange the foregoing chronological steps by which the pertinent issues of law and fact were joined in this tripartite lawsuit.

The cause was tried before a jury. There was no dispute of material fact between the bank and any of the defendants. It was clearly shown that the bank was out-of-pocket the $801.60 it had furnished to pay for the wool. Counsel for defendants other than Wooster insisted that as between the bank and themselves it was simply an action on a draft which they had not accepted and there-

fore not maintainable, and they offered a demurrer to plaintiff's evidence based on that theory. This demurrer was overruled, the court saying:

"It is not an action on the draft, it is an action for the purchase price of wool received by the defendant and not paid for."

The record reads:

[Counsel for defendants addressing counsel for the plaintiff bank]: "Are you relying on the draft as the basis of your suit?

.   .   .   .   .   .   .   .   .   .   .   .   .   .

[Counsel for the bank]: "No, but as an incident of the suit.

[Counsel for the wool company]: "We are entitled to a clear cut statement as to whether the suit is going to be based on the draft.

[The Court]: "I think the attorney stated that the suit is not brought upon the draft."

On the issues of fact between Wooster, cross petitioner, and the cross defendants, evidence *pro* and *con* was adduced by the litigants. Wooster's testimony supported certain allegations of his cross petition in which he claimed a right to other commissions for purchases of wool on cross defendants' account than that immediately related to the one in which the plaintiff bank was concerned. One of these was allowed by the jury, and some others were disallowed. The jury's most pertinent findings read:

"1. . . . (*a*) How much, if anything, do you allow O. O. Wooster as commission on the 2004 pounds of wool, being the 11 bags of wool in question in this suit by the plaintiff? A. $40.08.

"(*b*) How much, if anything, do you allow O. O. Wooster for the wool purchased by him on April 29th and 30th from [various named parties], which defendant, O. O. Wooster, alleged was 34 bags, weighing 8038 pounds? A. $160.76.

.   .   .   .   .   .   .   .   .   .   .   .   .   .

"3. Did the defendants, A. B. Reed Hide and Wool Company and A. B. Reed, directly, or through their general manager, Elmer Arnhart, mix with other wool the wool contained in the 11 bags shipped by the defendant, O. O. Wooster, on May 2nd, 1942? A. Yes.

"4. Did the defendants, A. B. Reed Hide and Wool Company and A. B. Reed, directly, or through their general manager, Elmer Arnhart, sell the wool contained in the 11 bags shipped by the defendant, O. O. Wooster, on May 2nd, 1942? A. Yes.

"5. Did O. O. Wooster receive any benefit from the 11 bags of wool mentioned in this action? A. No.

"6. Did A. B. Reed Hide and Wool Company or A. B. Reed, through their agent, Elmer Arnhart, refuse to deliver back to O. O. Wooster the identical 11 bags of wool here in controversy on the 6th day of May, 1942? A. Yes.

"7. Did the A. B. Reed Hide and Wool Company or A. B. Reed claim ownership of said 11 bags of wool on the 6th day of May, 1942? A. Yes.

"8. Was the reasonable market value of the 11 bags of wool in Beloit and vicinity in excess of $801.60 on May 1st, 2nd, 4th and 5th, 1942? A. Yes."

Six forms of verdict were submitted to the jury—(1) for plaintiff against all defendants; (2) for plaintiff against Wooster alone; (3) for Wooster against the other defendants; (4) for all the defendants against plaintiff's claim; (5) for all defendants except Wooster against plaintiff's claim; (6) for the cross defendants against Wooster's cross-claim.

With their special findings the jury returned a verdict in favor of the bank against Wooster for some amount not shown by the record, but presumably for the amount prayed for, $801.60. They also returned a verdict for Wooster against the other defendants for $1,002.44. Over objection of appellants the trial court sent the jury out for further deliberation, pointing out to the jury that they had not returned a verdict on the issue between the bank and the defendants other than Wooster. Later the jury returned with a verdict in favor of the bank against all defendants for $801.60. Wooster then moved to be allowed to remit that sum from the verdict of $1,002.44 in his favor. That motion was granted, which reduced the verdict in his favor to $200.84—which harmonized with the jury's special findings. Vigorous objections were made to the order of the court requiring the jury to return to the jury room to complete their deliberations. These and all the other usual objections to the course of the trial were heard and overruled, and judgment was entered for plaintiff on the verdict of $801.60 against all the defendants, and likewise on the verdict in favor of Wooster for $200.84 against the other defendants. In that part of the decree which pronounced judgment against all the defendants in favor of the bank, it was ordered that Wooster was only secondarily liable thereon.

Appellants specify a number of errors, which will be noticed as we proceed.

Error is urged on the overruling of appellants' motion to make plaintiff's petition more definite and certain. But they do not include the petition in their abstract nor the grounds of their motion. Plaintiff's counter abstract sets out the petition, and the cross petitioner's counter abstract states that two of the ten grounds of

appellants' motion were sustained and the other eight grounds were overruled. Error under this assignment does not appear.

Error is also urged on the overruling of appellants' demurrer to plaintiff's petition, but we think it stated a good cause of action on behalf of the bank against all the defendants, Wooster as well as the others. The demurrer was properly overruled.

Error is assigned on the overruling of appellants' motion to dismiss on their "special appearance" filed some months after their motion to make definite and their demurrer had been filed, argued and overruled. By that motion and also by that demurrer appellants were in court on general appearance, and their subsequent "special appearance" was a futility. (*Abercrombie v. Abercrombie,* 64 Kan. 29, 67 Pac. 539; *Bank v. Courter,* 97 Kan. 178, 155 Pac. 27; *Olsen v. Lambert,* 158 Kan. 94, 101-102, 145 P. 2d 159.) But appellants also contend that they were impleaded in the action as codefendants with Wooster through a collusive and fraudulent understanding between the bank and Wooster, and that this was done merely to subject appellants to the jurisdiction of Mitchell county and thus relieve Wooster of the necessity of suing them in Saline county where they could be lawfully summoned.

To this contention there are two complete answers. First, there was no evidence offered nor on which it could be fairly inferred that there was any collusion between the bank and Wooster. (*Dowell v. Railway Co.,* 83 Kan. 562, 112 Pac. 136; *Macksville State Bank v. Ehrlich,* 119 Kan. 796, 799, 241 Pac. 462.) Of course, Wooster had no defense to the bank's action, except that if liable at all he was only secondarily liable. The appellants were duly served with process issued by the Mitchell county district court and duly served therewith by the sheriff of Saline county. The petition plainly stated that they along with Wooster were joined in the action growing out of the purchase of 2,004 pounds of wool, for which plaintiff supplied the funds to appellants' authorized agent, that appellants had received and appropriated the wool, that they had not paid for it, either by honoring the draft which plainly stated that it was drawn to pay for that particular shipment of wool, or had they otherwise paid for it. The allegations of plaintiff's petition told them everything they needed to know, on which to have "appeared specially" to move to dismiss them out of court on jurisdictional grounds—if such grounds had ever been tenable. That they were not tenable under the issues of fact tendered in plaintiff's petition

was apparently quite obvious to the learned counsel who first repre-
sented the appellants, since they wasted no time filing such dilatory
plea but filed, first, their motion to make more definite and certain
and, later, their general demurrer to plaintiff's petition. Not only
was there no basis for appellants' gratuitous accusation of collusion
between the bank and Wooster, but counsel for the bank would have
been somewhat wanting in diligence if he had not "sued everybody"
concerned in the transaction which provoked this lawsuit. Since
one of the necessary parties to the action resided in Mitchell county
the action was properly brought in that county, and summons was
properly served on the other necessary parties to the action in Saline
county. (G. S. 1935, 60-509; id. 60-2502; *Hembrow v. Winsor*, 87
Kan. 714, 125 Pac. 22; *Bank v. Bank*, 106 Kan. 303, 187 Pac. 697;
*Macksville State Bank v. Ehrlich*, supra; *Farmers Grain Co. v.
Atchison T. & S. F. Rly. Co.*, 120 Kan. 21, 245 Pac. 734.)

Appellants press on our attention the rule of statute and precedent
that one on whom a draft or bill of exchange is drawn is not liable
thereon unless he accepts it. True enough, but one on whom a draft
is drawn for a bill of goods, which draft specifies the shipment of
goods for the payment of which the draft is drawn, cannot avoid
liability for the sum of money specified in the draft by his simple
refusal to honor the draft but nevertheless accepts the goods and
appropriates them to his own use. And that is exactly what hap-
pended in this case,—with the further aggravating circumstance that
the draft was drawn by appellants' own agent, and appellants had
theretofore acquiesced in their agent's method of paying for a sim-
ilar shipment of goods. In short it was not enough to escape liability
under the facts of this case for appellants to decline to pay the draft;
they should likewise have declined to accept the shipment of wool
specified in the draft.

Another complaint of appellants relates to the fact that Wooster
did not file an answer to plaintiff's petition within time. That might
have given plaintiff cause to complain in the trial court, but even so,
the matter was one addressed to the trial court's discretion. (G. S.
1935, 60-727; *Toplikar v. Kaufman*, 132 Kan. 479, 296 Pac 363;
*Cummins v. Standard Oil Co.*, 132 Kan. 600, 296 Pac. 731.)

Yet another error urged by appellants is based on the ground that
the trial court permitted issues to be raised between Wooster and his
codefendants with which the plaintiff bank was not concerned. But
that is well-established procedure where such issues are incidental

to the matters involved in the principal action or arose in connection therewith. (G. S. 1935, 60-3102; *Insurance Co. v. Bullene,* 51 Kan. 764, 33 Pac. 467; *Madden v. Glathart,* 115 Kan. 796, 224 Pac. 910; *Braden v. Neal,* 132 Kan. 387, 390, 295 Pac. 678; *Commercial Credit Co. v. Brown,* 143 Kan. 65, 67-68, 53 P. 2d 865.) See, also, *Ruf v. Grimes,* 104 Kan. 335, 179 Pac. 378, and syl. ¶ 5; *Davies v. Lutz,* 105 Kan. 531, 534, 185 Pac. 45.

The final error pressed on our attention pertains to the trial court's direction to the jury to return to their jury room and continue their deliberations on the issue raised between the bank and the appellants. Manifestly the jury had not completed its work, since its special findings Nos. 3 to 8, inclusive, necessitated a verdict of some sort to correspond therewith. It had returned a verdict for Wooster for $1,002.44, which is quite understandable. The jury assumed that he would have to pay the bank's claim for $801.60, since it furnished him the money to pay for the wool appropriated by appellants, and that he was also entitled to recover the total amount the jury found due him as commissions. (Jury's finding 1 [a] and [b].) The practice of sending a jury back to finish a task it has not completed or even to correct a manifest error in its verdict is not at all unusual. (*Kansas Wheat Growers Ass'n v. Windhorst,* 134 Kan. 736, 8 P. 2d 392; *Schwab v. Nordstrom,* 138 Kan. 497, 27 P. 2d 242; *Farmer v. Central Mut. Ins. Co.,* 145 Kan. 951, 67 P. 2d 511.) When the jury returned a verdict for $801.60 in favor of the bank and Wooster had remitted that amount from the verdict in his favor, the judgment entered on those verdicts was eminently correct.

There is no material error in the record and the judgment is affirmed.